RUMFORD FALLS PAPER COMPANY

*vs.*

THE FIDELITY AND CASUALTY COMPANY.

Cumberland.   Opinion April 17, 1899.

*Accident Insurance.   Limit of Liability.   Defending Suits.*

A policy issued by a casualty company against employers' liability is a contract of indemnity, in which the parties have a legal right to insert any stipulations and conditions which they deem reasonable and necessary, provided no principle of public policy is thereby contravened.

Where by the terms of such a policy the assured was required to render "all reasonable aid" in "effecting settlements," *held;* that the insured is justified in employing all legitimate means, not prohibited by the policy, to convince the insurer of the wisdom and expediency of accepting an offer of settlement for a sum that he believes would be to the advantage of both parties.

The court holds in this case that the evidence fails to establish the charge of collusion between the injured employee and the employer, or to prove any omission on the part of the latter to perform the obligations imposed upon it by the stipulations in the policy.

The defendant issued to the plaintiff company a policy against liability for damages on account of fatal or non-fatal injuries accidentally suffered by an employee or employees of the assured, while engaged at the places and in the occupations mentioned in the application for the policy, subject to the following agreements and conditions:

" 1.   The company's liability for an accident resulting in injuries to or the the death of one person is limited to fifteen hundred dollars; and, subject to the same limit for each person, its gross liability for a casualty resulting in injuries to or the death of several persons is twenty-five thousand dollars.

" 2.   The assured, upon the occurrence of an accident, and also upon receiving information of a claim on account of an accident, shall give immediate notice in writing of such accident or claim, with full particulars to the company, at its office in New York city, or to the agent, if any, who shall have countersigned this policy.

" 3.   If, thereafter, any legal proceedings are taken against the assured to enforce a claim for damages on account of such accident, the company will defend the same at its own cost in the name and on the behalf of the assured.

" 4.   The assured shall not, except at his own cost, settle any claim nor incur any expense nor interfere in any negotiations for settlement with the injured person, nor in any legal proceedings without the consent of the company,

previously given in writing, but he may provide such surgical relief as may be imperative. The assured shall render to the company all reasonable aid in securing information and evidence and in effecting settlements."

An employee of the plaintiff sustained an injury within the terms of this policy and offered to settle his claim in full for one thousand dollars; but the defendant company exercised its exclusive right to defend the suit, "in the name and on behalf of the assured." Thereupon a trial in court was had which resulted in a judgment of twenty-five hundred dollars, and costs, which the plaintiff paid to its injured employee. In an action by the plaintiff on the policy to recover the money thus paid, *held;* that the policy does not relieve the assured from all responsibility whatever for damages resulting from injuries to its employees; but the policy was obviously devised with a view to an apportionment of the responsibility between the insurer and the insured.

*Also;* the company nowhere agrees to pay the judgment or indemnify the assured against any judgment that may be recovered against it beyond the limit of $1500 and the cost of defending the suit. It is therefore considered by the court that the plaintiff is entitled to recover in this action against the defendant company the sum of fifteen hundred dollars, the amount of insurance specified in the policy, with interest thereon from the time when the verdict was rendered in the former action, and the costs recovered in that action with interest thereon from the time when they were paid.

See *Sawyer* v. *Rumford Falls Paper Co.*, 90 Maine, 354.

ON REPORT.

Action on a policy issued by a casualty company against employers' liability. The case was reported by the justice of the Superior Court, for Cumberland county, and the facts will be found in the opinion of the court.

*W. H. Clifford, E. Verrill and N. Clifford,* for plaintiff.

The policy says in effect: I will insure you for the sum of $25,000 with the limit of $1500 for my liability for a casualty to one person, but I reserve the right and privilege to determine whether to pay you the $1500 when the casualty takes place, settling with the injured party myself, or resisting the injured party's claim entirely, myself assuming the risk of defending against his suit. If I pay you the $1500 at the time set out in the policy for the casualty I am discharged; but if I decide without your concurrence to resist the claim brought by him for his claim, I will do that at my "own cost" just exactly as you, the assured, would be compelled to settle at your "own cost" if you independently settle with the injured party.

Rules of construction: If the policy contains two provisions on the same subject and they are inconsistent and contradictory, that provision most favorable to the assured will be accepted and the other disregarded. 1 Beach L. of Ins. § § 547, 548, p. 541; *N. W. Mut. Ins. Co.* v. *Hazelett,* 105 Ind. 22, and cases cited; *Am. Cr. Indemnity* v. *Wood,* 73 Fed. Rep. 88.

It is presumably the intention of the insurer in a policy that the insured shall understand in case of loss that he is protected to the full extent which any fair interpretation will give. 1 Beach L. of Ins. § 540, p. 542; Ib. § 548, p. 542; Ib. § 549, p. 542–3; Ib. § 554, p. 544.

If the words employed in a policy of themselves and in connection with other language employed in the instrument are susceptible of interpretation given them by the assured although in fact intended otherwise by the insurer, the policy will be construed in favor of the assured. 1 Beach L. of Ins., supra.

If words are uncertain in meaning they must be taken and construed most favorably to the assured. *Guaranty Co.* v. *Savings Bank,* 80 Fed. Rep. 772, 773.

As the "contract is a voluminous document prepared by the company, any ambiguity in its phraseology should be resolved against the draftsman." *Mer. Credit Co.* v. *Wood,* 68 Fed. Rep. 533.

If the instrument, considered as a whole, is ambiguous touching the precise loss which the policy covers, that meaning is to be given to it which is most favorable to the assured. *Allen* v. *Ins. Co.,* 85 N. Y. 475.

Paragraphs and clauses of a policy should not be construed so as to make them conflict with each other if such is possible. They should be construed so as to make them harmonize to give each and all the terms full force. Having indemnity for its object, the contract of insurance is to be construed liberally to that end. *Strafford, etc., Co.* v. *Sickness and Acc't Ass. Ass'n,* 1 Q. B. L. Rep. (1891), 402.

If the meaning of terms or words is made plain by the context, or by the use of said words in one part of the policy in relation to one party to the contract, the same meaning must be given to such

words in other parts of the instrument and in their relation to the other party to the contract. *So. Straffordshire* v. *Sickness & Acc. Ass. Ass'n,* 1 Q. B. L. Rep. (1891), p. 406; *Mer. Credit Guarantee Co.* v. *Wood,* 68 Fed. Rep. 533. In all cases the words of a policy are to be taken most strongly against the insurer. Wood, Fire Ins. (1st Ed.) p. 128; *Guarantee Co.* v. *Mechanics Bank,* 80 Fed. Rep. 778.

The first sense from which to infer the sense in which the parties in a contract have employed words is the contract itself, and the meaning of words under question may be ascertained by the use of the same words in other parts of the contract so used as to render their signification clear. Duer, Ins. (Ed. 1845), 165, § 10; *Hoffman* v. *Ætna Ins. Co.,* 32 N. Y. 43; Joyce, Ins., § 212.

Counsel argued: In electing to resist the suit of the injured party, the insurance company has assumed a responsibility and must take the consequences. *Dane* v. *Mort. Ins. Corp.,* 1 L. Rep. Q. B. D. (1894) 54; *Mandell* v. *Fidelity & Casualty Co.;* 170 Mass. 173; *Finlay* v. *Mexican Inv't Corp.,* (1897), 1 Q. B. 517.

This suit of Sawyer's was resisted by the insurance company, against the wishes of the Rumford Falls Paper Company—the nominal defendant—and with the full knowledge that it could have been adjusted and settled for one thousand dollars.

The fact that the defendant, when having decided to resist a claim of an injured person and defend against his suit, thus assumes the entire risk of such determination, is shown by the phraseology of the policy.

If defendant wishes to show that the agent (an attorney) solicited Sawyer's counsel to do an act improper or dishonorable, such is not within the scope of an attorney's general authority and special previous authority or subsequent ratification by principal must be shown. 2 Greenl. Ev. (15th ed.), § 68, p. 58; *McManus* v. *Crickett,* 1 East, 106; *Middleton* v. *Fowles,* 1 Salk. 282. This was not done.

The assured did not contract with the insurance company to give it supreme control over the question of resisting a suit by the injured party—surrender any management of such suits against

itself into the hands of the insurance company—and also bind itself to accept $1500 for whatever verdict might be rendered against it. The assured did not thus place itself in the power and at the mercy of an insurance company. No such provision appears in the policy. No such inference can be reasonably drawn therefrom and the law will not allow by mere construction such a power to be exercised by the insurance company without a corresponding responsibility.

*N. & H. B. Cleaves and S. C. Perry*, for defendant.

Alleged offers of compromise: *Beaudette* v. *Gagne*, 87 Maine, 534; *Marshall* v. *Jones*, 11 Maine, 58; *Webber* v. *Dunn*, 71 Maine, 340.

The contract: The reception, acceptance and retention of the policy, without objection, is conclusive evidence that the plaintiff knew its terms, and it is, therefore, bound by it. Counsel cited: *Davis* v. *Insurance Co.*, 13 Blatch. p. 462; *Richardson* v. *Maine Ins. Co.*, 46 Maine, 397; *Marshall* v. *Jones*, 11 Maine, 54, p. 57; *Sylvester* v. *Staples*, 44 Maine, 501; *Cocheco Bank* v. *Berry*, 52 Maine, 302; *Veazie* v. *Forsaith*, 76 Maine, 179; *Ames* v. *Hilton*, 70 Maine, 43; *Mutual Safety Insurance Co.* v. *Hone*, 2 N. Y. 235, p. 243; Cooke on Life Insurance, p. 235; Flanders on Fire Insurance (2nd ed.) p. 603; *Liscom* v. *Boston Mut. Fire Ins. Co.*, 9 Met. 205, 211; *Underhill* v. *Agawam Mut. Fire Ins. Co.*, 6 Cush. 440, p. 447; *Stevenson* v. *Piscataqua F. & M. Ins. Co.*, 54 Maine, 55, p. 71; *Blinn* v. *Dresden Mutual Fire Ins. Co.*, 85 Maine, 389; *Brown* v. *Quincy Mut. F. Ins. Co.*, 105 Mass. 396; *Ashland Mut. F. Ins. Co.* v. *Housinger*, 10 Ohio St. 10; *Whitehouse* v. *Cargill*, 88 Maine, 481; *Donnell* v. *Donnell*, 86 Maine, 518; *Illinois Mut. F. Ins. Co.* v. *Andes Ins. Co.*, 67 Ill. 363; *Bainbridge* v. *Nelson*, 10 East, 346; *Hamilton* v. *Mendes*, 2 Burr. 1210; *St. Louis A. & R. I. R. R. Co.*, 33 Ill. 189; *Insurance Co.* v. *Insurance Co.*, 38 Ohio St. 15; *Brierre* v. *American Indemnity Co.*, 67 Mo. App. 384; *Fidelity & Casualty Co.* v. *Fordyce*, 64 Ark. 174; 1 May on Insurance, (3d Ed.) § 1; *Com.* v. *Wetherbee* 105 Mass. 160; Wood, Fire Ins. p. 4; *Haley* v. *Dorchester Mut. Fire Ins. Co.*, 12 Gray, 552, S. C. 1 Allen, 536; 2 Phillips on

Insurance (5th Ed.) p. 418, § 1743; *Clark* v. *Bush*, 3 Cow. (N. Y.) 151; *Griffiths* v. *Hardenbergh*, 41 N. Y. 465, 470; *Lyon* v. *Clark*, 8 N. Y. 148, 152; *Warner* v. *Thurlo*, 15 Mass. 154; *Rice* v. *Nat'l Credit Ins. Co.*, 164 Mass. 285; *Mechanics Savings Bank & Trust Co.* v. *Guaranty Co. of North America*, 68 Fed. Rep. 459; *Catholic Knights of America* v. *Fidelity & Casualty Co.*, 63 Fed. Rep. 48, 58; *Glendale Woolen Co.* v. *Protection Ins. Co.*, 21 Conn. 18; *Anoka Lumber Co.* v. *Fidelity & Casualty Co.*, 30 L. R. A. 689.

Defendant was to defend any legal proceedings "at its own cost." 9 Vroom, (N. J. L.) 390; *Tillman* v. *Wood*, 58 Ala. 579.

Collusion: *Jeffrey* v. *Grant*, 37 Maine, 236; 1 Phillips on Ins. (5th ed.) p. 377; *Anoka Lumber·Co.* v. *Fidelity & Casualty Co.*, supra; *Granger* v. *Clark*, 22 Maine, 129; *U. S.* v. *The Amistad*, 15 Peters, 594; *Richardson* v. *Maine Ins. Co.*, 46 Maine, 348; 9 Am. & Eng. Ency. of Law, 80; *Smith* v. *Keen*, 26 Maine, 423.

The acts of the plaintiff were a violation of the terms of the policy, and there should be no recovery. *Tuttle* v. *Travellers' Ins. Co.*, 124 Mass. 175; *Keen, Admx.,* v. *N. E. Mut. A. Ass'n*, 161 Mass. 149; *Gt. Falls Manuf. Co.* v. *Worster*, 45 N. H. 110; *Richards* v. *Protection Ins. Co.*, 30 Maine, 278; *Dolloff* v. *Phœnix Ins. Co.*, 82 Maine, 266; *Witherell* v. *Maine Ins. Co.*, 49 Maine, 200; *Wood* v. *Hartford Fire Ins. Co.*, 13 Conn. 533.

SITTING: PETERS, C. J., EMERY, WHITEHOUSE, WISWELL, SAVAGE, FOGLER, JJ.

WHITEHOUSE, J. This is an action on a policy of insurance against "employers' liability," brought to recover of the defendant company the sum of $2763.90, being the amount of a judgment obtained against the plaintiff company by one Angus T. Sawyer as damages for an injury sustained by him while in its employment. See *Sawyer* v. *Rumford Falls Paper Co.*, 90 Maine, 354.

The present action comes to this court on a report of the evidence from the Superior Court of Cumberland county.

In the policy declared upon in the plaintiff's writ the defendant company agrees to indemnify the plaintiff company :

"Against liability for damages on account of fatal or non-fatal injuries accidentally suffered by any employe or employes of the assured, while engaged at the places and in the occupations mentioned in the application for this policy, subject to the following agreements and conditions:

"1.   The company's liability for an accident resulting in injuries to or in the death of one person is limited to fifteen hundred dollars (1500;) and, subject to the same limit for each person, its gross liability for a casualty resulting in injuries to or the death of several persons is twenty-five thousand dollars.

"2.   The Assured, upon the occurrence of an accident, and also upon receiving information of a claim on account of an accident, shall give immediate notice in writing of such accident or claim, with full particulars to the company, at its office in New York city, or to the agent, if any, who shall have countersigned this policy.

"3.   If, thereafter, any legal proceedings are taken against the Assured to enforce a claim for damages on account of such accident, the Company will defend the same at its own cost in the name and on the behalf of the Assured.

"4.   The Assured shall not, except at his own cost, settle any claim nor incur any expense nor interfere in any negotiations for settlement with the injured person, nor in any legal proceedings without the consent of the Company, previously given in writing, but he may provide such surgical relief as may be imperative. The Assured shall render to the Company all reasonable aid in securing information and evidence and in effecting settlements."

The other ten articles in the policy contain stipulations not material to be considered in determining the questions at issue between the parties to this action.

In its brief statement of special matter of defense, the defendant company avers that the assured failed to perform the obligation imposed upon it in article four, to render all reasonable aid in securing information and evidence for the defense of the action

brought against it by Angus T. Sawyer; and accordingly contends, in the first place, that the defendant company is exonerated from all liability to pay any part of the damages received by Sawyer; and, secondly, it contends that in any event, by the express terms of article one of the policy, the liability of the defendant for an accident resulting in injuries to one person is limited to fifteen hundred dollars.

I.   Under the averment in the brief statement charging a failure on the part of the assured to "render reasonable aid in securing information and evidence" for the defense, the defendant especially complains that, during the progress of the trial of Sawyer's action against the assured in the Supreme Judicial Court holden at Paris, the superintendent of the plaintiff company made the following statement at the hotel in the presence and hearing of the presiding justice and of several jurors constituting the panel for the trial of the cause, viz:  "We are not defending this case; this is the Fidelity and Casualty.  They insure us and they are the ones who are responsible; we wouldn't defend this case." One of the defendant's attorneys, Mr. Smythe of New York, testifies that he was present and heard this statement, and that it was heard by the presiding justice who was sitting at the same table with himself.  It does not appear, however, that the presiding judge administered any reproof to the superintendent at the time, or that he ever gave the jury any admonition against the prejudicial effect of such a remark.  It does not appear that any request was made by the defendant's attorneys that such admonition should be given to the jury, or that any reference to the matter whatever was ever made in court.  It does not appear that they sought to take advantage of the incident as a ground for claiming a mistrial or a motion for a continuance, or that any objection whatever was made to the further progress of the trial.  Nor does this objection appear as one of the grounds for the motion for a new trial presented to the law court.  The conduct of the defendant's attorneys, in this respect, is calculated to suggest a doubt whether it was then understood by them that any jurors, empanneled for the trial of the

cause, were within hearing at the time the objectionable remark is alleged to have been made by the superintendent. The remark was not necessarily a violation of the agreement to "render all reasonable aid in securing information and evidence;" and if offered simply as an indication of a hostile attitude on his part, there is no evidence that he knew that there were any jurors within hearing at the time of the remark.

It is conclusively shown by the evidence that Sawyer, the injured employee of the assured, before and after the commencement of his action, both by himself and his attorneys, informed the attorney of the defendant company as well as the managers of the assured, that he would accept one thousand dollars in full settlement of his claim for damages; and it undoubtedly was the opinion of the officers of the assured that a settlement on that basis would be wise and judicious and for the mutual benefit of the two companies. They were required, indeed, by the same stipulation in article four now in question, not only to "render all reasonable aid in securing information and evidence," but also, "in effecting settlements." It sufficiently appears from the report of *Sawyer* v. *Rumford Falls Paper Co.*, 90 Maine, supra, as well as from the evidence in the principal case, that the necessary "information and evidence" had all been secured long before the trial. There is no pretense that the assured concealed or withheld any information. The facts were all known. There was substantially no controversy in relation to them. The question at issue had reference rather to the appropriate inferences to be drawn from uncontroverted facts and to the legal consequences attaching to them. It was not in violation of any stipulation in the policy for the Paper Company to advise and assist in effecting a settlement which they believed in good faith to be for the interest of the insurer as well as of the insured.

But the defendant further complains that, at some time before the trial of Sawyer's actions against the assured, an attorney at law, who had been acting as attorney for the Paper Company, asked the attorneys for the plaintiff Sawyer if they would be willing to remit all above $1500 and hold the Paper Company harm-

less in case the verdict should exceed that amount, provided the Paper Company would assist the plaintiff in the prosecution of his suit. This remarkable suggestion appears to have been inconsiderately made in ignorance of the stipulations in the policy, and does not appear to have been made by authority of the Paper Company. In any event the "suggestion" was not adopted by Sawyer's attorneys, no such arrangement was in fact ever made, and the attorney who suggested it does not appear to have been present at the trial or to have had any connection with it whatever. The plaintiff company cannot be affected by such an unauthorized and unexecuted suggestion, however reprehensible in itself it may appear to have been. The defendant company was not in fact prejudiced or aggrieved by it.

Under the rigorous stipulations in articles three and four of the policy, it has been seen that, excepting the privilege of settling a claim "at his own cost," the assured retained no authority whatever to conclude settlements or manage legal proceedings. Under these articles full and absolute control over all defenses to actions brought, as well as all negotiations for the settlement of claims, was surrendered by the assured to the defendant company. In this case the defendant company refused to accept Sawyer's offer of settlement, and exercised its exclusive right to defend the suit "in the name and on behalf of the assured." Thus the assured helplessly awaited the determination of the question whether in that instance its policy of indemnity was to be a shield in its own hands, or a sword in the hands of its antagonist. For it has been seen that, as a result of the litigation, the plaintiff Sawyer, who offered to accept $1000 as a compromise settlement, recovered a verdict for $4250. This was reduced by the court to $2500, still entailing, however, a loss to the assured, according to the defendant's construction of the policy, of at least $1000, which would have been prevented by the proposed settlement. But the assured had no power to make a settlement "except at "his own cost." It only reserved the right to render all "reasonable aid" in effecting settlements. The power to decide the question of settlement had been surrendered to the insurance company. Under these cir-

cumstances, the managers of the assured, believing in good faith that an acceptance of the offer of settlement would be to the advantage of both the insurer and the insured, might be expected to make strenuous exertions and employ all legitimate means not prohibited by their policy, to convince the defendant company of the wisdom and expediency of the proposed adjustment; and their conduct in that respect should now be reviewed with reasonable liberality and charity.

Thus, when the facts relied upon by the defendant to establish the charge of collusion between Sawyer and the Paper Company, and to prove a violation on the part of the latter of the stipulations in the policy, are examined in the light of these negotiations for a settlement, and of the situation and circumstances of the parties, it is the opinion of the court that the evidence fails to disclose any want of good faith on the part of the assured, or any omission to perform the obligations imposed upon it by the terms of the policy. Indeed, it appears from the letter of one of the attorneys who tried the case for the defendant company, written immediately after the opinion of the law court was announced, that this evidence was not then deemed sufficient to maintain the defense now interposed. He then wrote: "As I understand it, our company is willing to pay $1500, and interest if it is demanded, also such proportional part of the costs as the $1500 bears to the $2500, or three-fifths.

II.   It is also contended on behalf of the plaintiff company that the amount, which it is entitled to recover in this action, is not to be measured by the limitation of fifteen hundred dollars contained in article one of the policy. It is insisted that under the circumstances of this case, upon a reasonable construction of the several provisions of the policy, the plaintiff is now entitled to recover the full amount of the final judgment obtained by the original plaintiff, Angus T. Sawyer, viz., $2763.90. It is conceded that if the defendant had elected to pay the plaintiff company the sum of fifteen hundred dollars within a reasonable time after receiving notice of Sawyer's claim for damages, it might, by such payment,

have obtained complete exoneration from all further liability under
this policy.  But, it is urged that having declined to discharge its
liability under the fourth article in the policy, and having elected
to defend the legal "proceedings" commenced by Sawyer "at its
own cost" by virtue of the stipulation in article three, the defend-
ant must now pay not only the "cost" of defending the suit, but
all the damages represented by the judgment recovered in the suit.
Attention is called by the plaintiff to the provision in article four
that "the assured shall not, except at his own cost, settle any claim,
nor incur any expense nor interfere in any negotiations for settle-
ment," where, it is said, the phrase "at his own cost" necessarily
means the payment of the damages claimed by the injured party.
It is earnestly contended in behalf of the plaintiff that the phrase
"at its own cost" must have been employed to express the same
purpose in article three where the defendant company agrees to
defend legal proceedings "at its own cost," and that it should now
be interpreted to mean not only that the defendant company would
assume all the expense of defending the suit, but would also pay
any judgment that might be recovered.  It is insisted that this
construction is a fair and reasonable one; that it gives to every
article in the policy a clear field of operation and reconciles the
different provisions and stipulations with each other; while on the
other hand it is insisted that the construction placed upon the con-
tract by the defendant, giving to that company absolute power to
control litigation and settlements without adequate responsibility
for the consequences, must result in hardship and injustice to the
assured.

When considered from the assured's point of view this argument
is calculated to produce a strong impression, and the question has
accordingly been examined with the careful study and reflection
which its importance and inherent difficulties require.

It must be remembered, in the first place, that this policy of
insurance is a contract of indemnity in which the parties have a
legal right to insert any conditions and stipulations which they
deem reasonable or necessary, provided no principle of public
policy is thereby contravened.  Like all other contracts it is to be

construed in accordance with its general scope and design and the real intentions of the parties as disclosed by an examination of the whole instrument. *Philbrook* v. *N. E. Mut. Fire Ins. Co.*, 37 Maine, 146 ; *Blinn* v. *Dresden Mut. Fire Ins. Co.*, 85 Maine, 390. In case of ambiguity, or inconsistency, it is often said that the court will give the policy a construction most favorable to the assured, for the reason that as the insurer makes the policy and selects his own language he is presumed to have employed terms which express his real intention. Wood on Fire Ins. 128, and cases cited. But, as remarked by the court in *Imperial Fire Ins. Co.* v. *Coos Co.*, 151 U. S., 452, for the purpose of safeguarding this rule against any abuse of its application, it should be considered in connection with another rule equally well settled, "that contracts of insurance, like other contracts, are to be construed according to the sense and meaning of the terms which the parties have used; and if they are clear and unambiguous, these terms are to be taken and understood in their plain ordinary and popular sense."

With reference to the general scope and purpose of the policy in suit, it is manifest from an examination of the whole instrument that, while it was designed to be a contract of indemnity to the limited amount agreed upon, it was not the intention of the parties to relieve the assured from all responsibility whatever for damages resulting from injuries to its employees: In the discussion of the first proposition set up in defense, it has been seen that the arbitrary exercise of the power retained by the defendant company to control settlements and legal proceedings might indeed in some cases involve the assured in greater loss than the forfeiture of the policy. On the other hand, if the policy should be construed to impose upon the defendant company the obligation either to pay the assured the sum of fifteen hundred dollars, accept the employee's offer of settlement or defend the legal proceedings at the peril of being compelled to pay the full amount of any judgment for damages and costs that might be recovered, it is to be feared that the assured, being in most instances under no liability to pay any part of the damages, would have little incentive to defend against the claims of injured laborers, however devoid of legal merit. There

is also ground for apprehension that, under such a contract of indemnity, the sense of freedom from responsibility enjoyed by the assured would be such as to induce a relaxation of those rules of prudence and vigilance which are indispensable for the reasonable protection of the laborers engaged in its service.

It was undoubtedly in contemplation of these things that the policy in suit was devised with a view to an apportionment of the responsibility between the insurer and the insured. Whether the interests of the assured are in all respects sufficiently guarded by the stipulations in the contract, it is unnecessary to consider. These corporations had the same right that individuals have to make their own contract. The court has no power to add to it or take from it. The function of the court is to interpret it, not to make it. The first article in the policy declares that the defendant "company's liability for an accident resulting in injuries to or the death of one person is limited to fifteen hundred dollars." This language is clear and unambiguous, and would seem to be susceptible of only one interpretation. It measures the amount of the insurance and limits the risk of the defendant company in case of accident and injury to one person. There is no other stipulation in the policy which is inconsistent with it. The agreement in article three simply requires the defendant company to defend "any legal proceedings" at "its own cost" in the event that it elects not to pay the $1500 or accept any offer of settlement. It may be conceded that the word "cost" is here used in the same relative sense as in the succeeding article in the policy, where the assured is prohibited from settling any claim "except at his own cost." What it will cost to settle a claim is obviously the sum required to pay it. What it will cost to defend a lawsuit is the amount required to pay the fees of counsel and witnesses and other expenses involved in presenting the defense, including the taxable costs recovered by the plaintiff in that suit, if the defense is unsuccessful. What it will cost to make a defense to the suit is one thing; what it will cost to settle the judgment that may be recovered is another and a different thing. In each of these articles in the policy it is only the precise thing specified, and no more, that

is to be done by the policy "at his own cost." The defendant company nowhere agrees to settle any judgment, or to indemnify the assured against any judgment that may be recovered against it, beyond the specified limit of $1500, and the cost of defending the suit. This is clearly the contract which the parties made and the one which they are entitled to have enforced according to its terms.

The conclusion, therefore, is that the Rumford Falls Paper Company is entitled to recover in this action against the Fidelity and Casualty Company the sum of fifteen hundred dollars, the amount of insurance specified in the policy, with interest thereon from February 21, 1896, the time when the verdict was rendered in the action, *Sawyer* v. *Rumford Falls Paper Company*, and the costs recovered in that action, taxed at sixty-two dollars and seventy-two cents, with interest thereon from July 14, 1897, the time when the execution for the damages and costs in that action was paid by the plaintiff company.

*Judgment for plaintiff accordingly.*