Hillsborough, ⎰
Nov. 5, 1924. ⎱

### JOHN L. DOUGLAS *v.* UNITED STATES FIDELITY AND GUARANTY COMPANY.

A liability insurance company is liable to a person insured by it for damages due to its negligent failure to settle a claim covered by a policy by which it contracts to investigate such claims, to make settlement in accordance with the law, and to defend suits.

The obligation to use due care need not be expressly stated in the contract. That obligation is ordinarily imposed by law upon all who undertake a service.

When one, as agent for another, has exclusive control of a transaction in which he himself has an interest possibly adverse to that of his principal, his conduct will be subject to closer scrutiny than that of the ordinary agent. Under such circumstances he is bound to give the rights of his principal at least as great consideration as he does his own.

CASE, for negligently failing to settle a claim for damages against the plaintiff. Trial by jury and verdict for the plaintiff. The plaintiff died before the trial, and the cause was prosecuted by his administrator.

The defendant had insured the plaintiff against liability for per-

sonal injury to his employees not exceeding $5,000 for a single injury. The contract contained the following provisions, among others:

## LIABILITY.

II. To indemnify the employer against loss by reason of the Liability imposed upon the employer by law for damages on account of such injuries or death, provided such loss is legally insurable under the laws of such States or Commonwealths as are specified in Item 3 of the Declarations.

## SERVICE.

III. To serve the Employer (1) by the inspection of work-places set forth in said declarations whenever deemed necessary by the Company, and thereupon to suggest to the Employer such changes and improvements as may operate to reduce the number and severity of personal injuries during work; and (2) upon notice of such injuries so sustained by investigation thereof and by settlement of any resulting claims in accordance with the law.

## DEFENSE.

IV. To defend in the name and on behalf of the Employer any suits or other proceedings which may at any time be instituted against him on account of such injuries, including suits or other proceedings alleging such injuries and demanding damages or compensation therefor; although such suits, proceedings, allegations and demands are wholly groundless, false or fraudulent.

## COSTS AND EXPENSES.

V. To pay all costs taxed against the Employer in any legal proceeding defended by the Company, all interest accruing after entry of judgment, and all expenses incurred by the Company for investigation, negotiation and defense.

An accident occurred wherein one Elliott, the plaintiff's employee, was injured. The defendant was notified and assumed charge of the defense. An offer of settlement for $1,500 was made by Elliott, and was not accepted. The case went to trial and resulted in a verdict for $13,500. Other facts bearing upon the defendant's conduct are stated in the opinion. Transferred from the superior court by *Marble*, J., upon the defendant's exceptions to the denial of its motion for a nonsuit, and to the instructions given to the jury.

*Lucier & Lucier* and *Robert W. Upton* (*Mr. Upton* orally), for the plaintiff.

*Henry V. Cunningham* (of Massachusetts) and *Banigan & Banigan* (*Mr. Cunningham* orally), for the defendant.

PEASLEE, C. J.   I.   The motion for a nonsuit is put upon the ground, among others, that there was no evidence of the defendant's negligence.   The testimony shows a serious injury to the servant, Elliott, one for which a common-law recovery would probably exceed the $5,000 insurance carried with the defendant.   There was an offer by Elliott to settle for $1,500.   The defendant failed to accept the offer, suit was brought and a verdict for $13,500 was returned and sustained.   *Elliott* v. *Douglas*, 80 N. H. 418.

At the trial of the present action, the defendant's head representative in the transactions (Hartnett) sought to justify the failure to settle upon two grounds: That it had no reason to believe that Douglas was liable, and that Elliott's mental condition was such that a binding settlement with him could not have been made.

As to the first ground, the evidence was conflicting.   While Hartnett denied all knowledge of any inculpating facts, O'Callaghan, the adjuster who made the investigations, was not called to testify.   On the other hand, Douglas's son testified that he discovered the existence of the cause upon which the verdict was sustained shortly after the accident, and that he and his father told the adjuster all that the witness knew.   It is not denied that knowledge of such facts would at once inform anyone that Douglas was probably liable.   This phase of the defense is put upon the ground of lack of such knowledge.   It is manifest that this situation presented a clear and plain issue for the jury.

As to Elliott's mental condition, the evidence was also conflicting; and this issue was also for the jury.

It is further sought to excuse the defendant upon the ground that it followed the advice of counsel.   According to the evidence, counsel were not informed of the facts known to the junior Douglas.   It follows that the defence of reasonable reliance upon the advice of counsel (if open to this defendant) cannot avail upon this motion.   If O'Callaghan failed to tell Hartnett, it is liable for O'Callaghan's fault, and if Hartnett failed to tell the lawyer, it is responsible for Hartnett's fault.

Further light is thrown upon Hartnett's knowledge and motives by other portions of the evidence.   But it is unnecessary to go further into details.   Enough has been said to show that there was evidence to be considered upon the question of the defendant's negligence.   The case is governed by *Cavanaugh* v. *Corporation*, 79 N. H. 186.

II. It is also urged that the issue of negligence in this case is one that could not be fairly and intelligently passed upon by a jury, that it involves intricate questions of law, not within the understanding of jurors, and upon which they could not pass in any event without the aid of expert testimony. The extent of the right to trial by jury is settled by ascertaining how it was "used and practiced" before 1784. "With some exceptions which do not bear upon the present controversy, the right of trial by jury in suits at law was absolute. The books will be searched in vain for a precedent for taking a common-law action from the jury upon the ground that the particular case was beyond their comprehension." *Daley* v. *Kennett*, 75 N. H. 536, 537.

Nor is the claim that further or expert evidence was needed well founded. The issue as presented to the jury did not involve intricate questions of law. The defendant's claim was that it did not consider Douglas liable because it had no information of facts showing liability. The plaintiff's claim and evidence tended to show that such facts existed and that the defendant was informed of them. The pros and cons of the defendant's conduct were very fully gone over in the introduction of the testimony. It might be said that the subject was exhaustively debated between counsel and the witnesses. The net result was that at the close of the evidence the issues between the parties were clearly defined and were merely questions of fact, save only those usual matters as to which the presiding justice gave instructions as to the law. If the defendant desired other or fuller instructions as to the bearing of certain facts upon the issue of negligence, it should have filed requests therefor. In the absence of such requests, it cannot complain of what the charge does not contain. *Tuttle* v. *Dodge*, 80 N. H. 304, 316, and cases cited.

III. The defendant concedes that *Cavanaugh* v. *Corporation*, 79 N. H. 186, permits a recovery for a negligent failure to settle, but it is urged that the decision is contrary to reason and to the authorities elsewhere. In support of this position the following cases are cited: *Rumford Falls Paper Company* v. *Company*, 92 Me. 574; *Schmidt* v. *Company*, 244 Pa. St. 286; *New Orleans &c. Company* v. *Company*, 114 La. 153; *McAleenan* v. *Company*, 219 N. Y. 563; *Levin* v. *Company*, 233 N. Y. 631; *Auerbach* v. *Company*, 236 N. Y. 247.

The cases relied upon do not consider the question involved here. They were all actions upon the contract, and were brought upon the theory that the duty to settle was absolute. The question of care or negligence in exercising the right to elect is not considered in any of

them. But they do state, in the course of the discussion, that the insurer has an option to settle or not as it chooses. The fact that the right of election is vested solely in the insurer, does not dispose of the present case. Exclusive authority to act does not necessarily mean the right to act arbitrarily. Our law upon the subject is based upon the broad proposition that in all its dealings with the defense to Elliott's claim the defendant was bound to act as a reasonable man might act under the same circumstances.

While the questions of negligence and agency are not discussed in the cases cited by the defendant, they are considered in another case, wherein the issues here involved are decided in the defendant's favor. *Wisconsin Zinc Company* v. *Company*, 162 Wis. 39. The question of negligence is there disposed of upon the ground that the right to settle is a mere option. "We can find nothing in the contract by which the defendant agreed to make any settlement, nor whereby it agreed to exercise ordinary care in the matter of negotiating settlements. It would be an arbitrary assumption to say that the parties intended that their contract should contain such important provisions and still omitted any express mention of them." *Ib.* 50, 51. So far as an obligation to use care is concerned, the above reasoning has no weight. That obligation is ordinarily imposed by law upon all who undertake a service. *Burnham* v. *Stillings*, 76 N. H. 122, and cases cited. It is not usual to express this duty in the contract.

Nor is the fact that there is no hard and fast agreement to make a settlement decisive. The charge here is not that the defendant made a contract to settle, but that it contracted to conduct the defence in all respects with reasonable prudence. That there is liability for negligent defense is everywhere admitted (*Wisconsin Zinc Company* v. *Company*, 162 Wis. 39; *Auerbach* v. *Company*, 236 N. Y. 247), and the attempt to exclude liability in this case must rest upon the proposition that the insurer had an option and no duty. Yet it seems to be admitted in all the cases that the insurer must act in good faith. It is not perceived how this can be so if there was a mere option. The liability is said to arise out of the control the insurer has and exercises over the whole defense. *Wisconsin Zinc Company* v. *Company, supra.* Manifestly this amounts to saying that because of the situation the insurer has certain duties imposed upon it in this matter; and when that much is established the whole foundation for the conclusion of non-liability is gone.

The fundamental question is, does or does not the insurer owe to the insured a duty in the matter of a settlement? If it does not owe

such a duty, it is not liable either for a failure to act or for the manner of action. It may refrain from completing a settlement for any reason, however essentially dishonest, and still there would be no liability. If, as the cases roundly state, it has an exclusive and absolute option, no one can question its motives for the exercise or non-exercise of the privilege. No case has gone that far. All acknowledge a liability for fraudulent conduct, or lack of good faith, in refusing to settle. But they are silent as to any reasoning which would sustain such liability and at the same time deny responsibility for negligent conduct.

The whole question of insurance against loss may be laid out of the case, and still the defendant would be accountable for negligence. It had contracted to take charge of the defense of this claim. That contract created a relation out of which grew the duty to use care when action was taken. The insurer entered upon the conduct of the affair in question. It had and exercised authority over the matter in every respect, even to negotiating for a settlement. It is difficult to see upon what ground it could escape responsibility when its negligence resulted in damage to the party it had contracted to serve. *Attleboro Mfg. Company* v. *Company*, 240 Fed. 573.

Denial of agency upon the part of the insurer is put upon the ground that if there were such a relation the insurer would be bound to consider the interests of the insured, when in conflict with its own. It is then said that when there is such conflict the insurer may consult its own interests solely. Therefore, it is concluded, there can be no agency.

This reasoning seems to imply that one party cannot be the agent of the other party. But the law is plainly otherwise. The parties may make that sort of an agreement if they see fit. The result of such a compact is not to leave the promisor free to act as though he had made no promise. On the contrary, his conduct will be subject to closer scrutiny than that of the ordinary agent, because of his adverse interest. The fact that here the insurer stood to lose but a part of the claim, and that as to the balance the chances of loss growing out of mismanagement of the defence were upon the insured, is an added reason for holding the defendant to the use of reasonable care in the exercise of its exclusive control over the negotiations. Where one acts as agent under such circumstances, he is bound to give the rights of his principal at least as great consideration as he does his own. *Colby* v. *Copp*, 35 N. H. 434, and cases cited; *Richards* v. *Insurance Company*, 43 N. H. 263. The insurer

cannot betray the trust it has undertaken, nor be relieved from the usual rule that in such a case an agent must serve as he has promised to serve.

The fact that there will be, or may be, conflicting interests is evidence to be considered upon the question of intent to create an agency; but it is of little weight in view of the explicit terms of the present contract. The whole control of negotiations is taken from the insured and given to the insurer, who, under the caption of "Service," agrees to investigate all accidents and settle any resulting claims "in accordance with the law." The argument that the latter clause refers to the payment of judgments, and not to adjustments, is plainly untenable. The promise of indemnity is contained in another and independent paragraph.

To hold that under such an agreement as this the insurer owes no duty to the insured, would create the situation depicted by the court in *Rumford Falls Paper Company* v. *Company*, 92 Me. 574, 583: "Thus the assured helplessly awaited the determination of the question whether in that instance its policy of indemnity was to be a shield in its own hands, or a sword in the hands of its antagonist."

It is said that "the right to make voluntary settlements must, almost as a matter of necessity, rest with the insurer rather than the insured. . . . It furnishes the only safeguard available against the payment of excessive damages," because "we are all apt to be generous when it comes to spending the money of others." *Wisconsin Zinc Company* v. *Company*, 162 Wis. 39, 48. The argument is sound, but the cases applying it in favor of the insurer deny its benefits to the insured. As the right of control goes to the insurer by the reasonable exigencies of the situation, so too the duty of the insurer to act reasonably towards the liability of the insured, which he has in charge, is to be implied for like reasons.

The suggestion in *Rumford Falls Paper Company* v. *Company*, 92 Me. 574, 586, that the liability of the insurer ought not to be so extended as to relieve the insured of all sense of responsibility, may also be conceded to be sound. But it has no application when the insurer is held only to the rule of reasonable conduct. The true rule is that each party to such a contract is bound to accord fair and reasonable treatment to the rights of the other. In case of serious injury they each have an interest in the disposal of the claim; and, so far as each is made an actor in that regard by the terms of their contract, he is bound to use due care to protect the other's rights. As to his own rights he may of course do as he sees fit.

The language used in a New York case, upon a similar question, is applicable here. "In the light of these conditions it is idle to look to the letter of the insurance contract for the measure of the defendant's liability. . . . Without attempting to further characterize the defendant's position, it is enough to say that it would be a reproach to the law if there were no remedy for so obvious a wrong as was inflicted upon the plaintiff. His rights, as we have said, go deeper than the mere surface of the contract written for him by the defendant. Its stipulations imposed obligations based upon those principles of fair dealing which enter into every contract. Even the defendant has invoked this implied obligation of good faith and fair dealing not expressed in the terms of its written contract. . . . If this was the plaintiff's duty, it was not less the correlative obligation of the defendant to 'deal fairly and in good faith' with him." *Brassil* v. *Company*, 210 N. Y. 235, 241, 242.

The question whether, when it pretty clearly appears that if liability were established a recovery would exceed the policy limit, the insurer could demand a reasonable contribution by the insured to a settlement made within the policy limit (*Brown* v. *Company*, 232 Fed. 298), does not arise here. If it be assumed that in such a situation the insurer could refuse to settle unless such contribution was made (*Levin* v. *Company*, 233 N. Y. 631), it would not affect this case. The insurer did not make any such proposition.

It is true, as the cases state, that the parties could make such a contract as they chose. That gets one but a short way towards finding out the meaning of the language they employed to express their agreement. The rules that the parties probably intended to make a reasonable contract, that the agreement is not to be taken strongly in favor of the insurer, that unconscionable bargains are not favored and are not to be implied, and that the surrounding circumstances are to be taken into account, are of more importance in the interpretation of the contract.

It is a matter of common knowledge that the great majority of claims arising under these policies are settled. The percentage of litigated cases is small. Settlement is the rule and contest the exception. The parties must have known this when they made their contract. They must have contemplated that the undertaking of the insurer, under the attractive title of "Service," included the making of settlements. It was that which the insured contracted for; not necessarily the settlement of all claims that could be thus disposed of within the policy limits, or of claims which there was reason-

able ground to contest. But the parties must have understood that settlements would be undertaken by the insurer, and that in carrying out this undertaking the insurer would act in a reasonable way.

If the insurer desired to have this broad authority over the management of the defense to the claim, and at the same time to be relieved of the ordinary responsibilities of one who undertakes to act for another, it should have so stipulated in plain terms. It is not to be assumed that it attempted to drive a hard bargain, or to conceal the purpose it had in view by the use of obscure language.

It has been said that "Apparently the insurer has the insured in the hollow of his hand so far as control of settlement is concerned, under the terms of the usual indemnity policy; and his liability is in no wise affected by the exercise of this arbitrary power." 6 L. R. A., N. S., 562, *note*. If this be true, it can be so only in cases where such an unjust and oppressive situation has been created by plain and unmistakable language. The power is not an arbitrary one, unless the contract so provides in explicit terms.

It may be that the present case can be distinguished from those herein cited from other jurisdictions, upon the ground of differences in the terms of the contracts under consideration. But, assuming that it cannot be so distinguished, we fail to find sufficient reason for abandoning the rule announced in the *Cavanaugh* case. The contrary holding involves the anomalous situation where, as to settlement, the insurer has no duty and the insured has no rights. Power to act has been surrendered by the insured and committed to one who has no corresponding responsibility. The adjustment of controversy is always favored by the law. But here the claim is that this field of operation is left as a no man's land. The insured is prevented from entering upon it, and the insurer cannot be asked to do so, or be held accountable for his conduct if he does so enter. The creation of such a situation is not to be implied. It could arise only from the explicit and unmistakable agreement of the parties. No such agreement was made here, and the defendant is held to the conduct of the average man in carrying on negotiations for a settlement. The decision in *Cavanaugh* v. *Corporation*, 79 N. H. 186, is reaffirmed.

*Exceptions overruled.*

All concurred.