Coös,
May 1, 1934. }

JAMES C. WEMYSS *v.* WYOMING VALLEY PAPER COMPANY.

*Bernard Jacobs* (by brief and orally), for the plaintiff.

*Irving A. Hinkley* (by brief and orally), for the defendant.

BRANCH, J.    Underlying much of the defendant's argument is the thought, not clearly expressed, that the relationship between the defendant and the plaintiff was not that of master and servant, and that the rules of law governing the latter relationship were, therefore,

inapplicable. This theory is untenable. "The word *servant*, in our legal *nomenclature*, has a broad significance, and embraces all persons of whatever rank or position, who are in the employ, and subject to the direction or control of another in any department of labor or business. Indeed it may, in most cases, be said to be synonymous with employee." Wood, M. & S., s. 1; 1 Labatt, M. & S., ss. 2, 6; 39 C. J. Tit, M. & S., s. 1, and cases cited. The plaintiff was undoubtedly an employee of the defendant, and although many of his duties were managerial in their nature he was, according to the uncontroverted evidence, completely subject to the direction and control of his father, the general manager. We, therefore, think it is plain that he was entitled to the rights and subject to the disabilities of a servant. Accordingly it must be held that the trial court was correct in its instruction to the jury that plaintiff's title or relative rank in the employment was not decisive of his rights.

The contention of the defendant that there was no evidence of its negligence is without merit. The necessity for covers to the agitator boxes was apparently conceded at the trial, and under the evidence, could not be denied. There was abundant evidence that the two planks which were laid over the first box did not constitute a proper cover and that in order to make one they should have been cleated on the bottom so as to hold them together and prevent sliding either laterally or longitudinally. These planks were installed by defendant's mechanics, and the defendant was, therefore, chargeable with knowledge of their actual condition as well as their unsuitableness for the purpose to which they were put. Cases like *McIntyre* v. *McIntyre, ante,* 479, holding that a master who furnishes suitable materials for his servants to use in the progress of the work is not liable for their improper use, have no bearing upon the duty of a master to furnish reasonably safe machinery.

The argument that the plaintiff cannot recover because "the plaintiff himself was the agent who was supposed to have discovered the defect if there was one discoverable by proper inspection" will not bear examination. In making this argument the defendant seems to assume that there is a rule of law to the effect that the chief executive officer of a manufacturing establishment is personally chargeable with knowledge of all defects in the plant which might be discovered by proper inspection. We need not consider the dubious nature of this assumption (see *Smith* v. *Bowersock*, 95 Kan. 96; s. c. aff'd, 243 U. S. 29) since the evidence discloses two complete answers to the defendant's contention.

In the first place, the plaintiff was not in charge of the defendant's plant at the time when the installation of the machine was completed and when final inspection should have been made. During this time, as above stated, the plaintiff was away and the plant was in charge either of his father, the general manager, or his cousin, Walter F. Wemyss, "an assistant manager," who, according to the evidence, was in command of the establishment in the absence of both the plaintiff and his father. Under these circumstances there is no rule of law which would require that the plaintiff be treated as though he had actual knowledge of the condition of the wooden cover.

In the second place, Walter F. Wemyss, the assistant manager, testified specifically that he "had charge of the looking after the safety of the machinery" and that he was "responsible for the safety of the mill." Consequently the defendant's argument fails because its factual foundation was not established.

It is argued that the defendant "cannot be held chargeable with any anticipation that an employee would, while the machine was running, walk across a wet, slippery two-inch iron partition and attempt to balance himself on such a partition with an opening at the rear of the partition into which such employee might fall." The obvious answer is that the presence of men between the two sets of rolls was to be expected and due care required that they be protected from the danger of coming in contact with the revolving paddles in the agitator box. Whether the defendant should have foreseen that an accident might happen precisely as this one did is immaterial. The criterion by which a master's appreciation of danger is to be judged is no less exigent than that applicable to a servant. "The test to determine that question is not to inquire whether he anticipated being injured in the precise way the accident happened, . . . but whether he knew he was liable to receive a substantial injury because of the unusual condition, if it was permitted to continue." *Roy* v. *Hodge,* 74 N. H. 190, 191. "Lack of care . . . which renders the work-place unsafe, of which the master knows or ought to have known in season to prevent the injury, is a breach of that obligation [to provide a safe workplace] without reference to the manner in which the danger was created." *Leazotte* v. *Company,* 74 N. H. 480, 481; *Tullgren* v. *Company,* 82 N. H. 268, 275, 276.

There was evidence, however, that it is a common practice for men to walk along the edge of the agitator boxes and, as more fully appears hereafter, that there are adequate reasons for the existence of such a practice. Under these circumstances it was for the jury to

say whether the defendant should have anticipated such conduct.

Since the plaintiff was not chargeable, as a matter of law, with knowledge of the condition of the cover, the argument that he assumed the risk of injury from that cause comes to nothing.

The argument that the plaintiff was guilty of contributory negligence because he chose to walk along the edge of the agitator box instead of on the cover, is also without merit. In walking between two sets of rolls, which were apparently less than two feet apart, due care rather obviously required that a person should keep as far as possible away from the rolls which were turning inward and were, for this reason, dangerous, and this was one explanation given by the plaintiff for his conduct. He testified that the "first thing anybody is cautioned" about "is to work as far away as possible from rolls turning in"; that the course which he pursued would carry him "sufficiently away from the rolls" and that "in paper machines we always work on the front of the press, not on the back." Another reason given by the plaintiff for his conduct was that by working in the position above described he avoided turning his back to the rolls from which danger was to be anticipated. Under these circumstances the question of his due care in walking where he did was plainly for the jury.

Similarly, the defendant's other suggestions that the plaintiff might have moved the planks before he went between the rolls or substituted for them an iron cover from one of the other agitator boxes, presented only issues of fact for the jury.

The defendant requested the court to charge the jury that if the accident was caused by the negligence of a fellow-servant of the plaintiff, there should be a verdict for the defendant. So far as we can see, the case presented no issue to which this rule was applicable and the request was properly denied.

The defendant also requested the court to charge the jury as follows: "If you find that the defendant had no reason to apprehend that the plaintiff would adopt an improper method of working on and about the machine involved in the accident, then it owed no duty to the plaintiff to guard against the dangers incident to such improper method of use and operation." This request was objectionable because of its apparent assumption that the plaintiff did in fact adopt an "improper method of use and operation." It might properly have been denied upon this ground. Its denial was required, however, for another and more important reason, *i.e.* because it was designed to raise an issue of fact which was immaterial to the decision of the

case. As indicated above, the gist of the plaintiff's claim was not that the defendant failed to protect him against the danger of slipping from the edge of the agitator box, which with a proper cover in place would have been negligible, but that it failed to protect him from the danger of being caught in any way by the paddles revolving in the box. The effect of the requested instruction would, therefore, have been to give apparent importance to a wholly inconclusive issue, to the obvious prejudice of the plaintiff. The rights of the defendant with reference to its claim that the plaintiff adopted an improper method of doing his work were sufficiently protected by the charge upon the question of contributory negligence.

The plaintiff testified upon direct examination that his salary was paid during the period of his disability, which extended over eleven months. Subsequently, subject to the defendant's exception, he testified as follows: "Q. And did you obligate yourself to return it? A. Yes." With reference to the question of damages it was obviously proper for the plaintiff to show that the payments made to him during his disability in the form of salary were really in the nature of advancements which he was bound to repay. For this purpose the evidence was admissible.

The defendant argues that there could have been "only one purpose in offering the evidence and that was to convey to the jury that the case was being defended by an insurance company and that the nominal defendant was not averse to a large verdict being rendered against it." If the evidence was, indeed, subject to misuse in this way, the defendant might have protected its rights by asking for instructions limiting its use by the jury. It could not demand as of right that the evidence be excluded. *State* v. *Travis,* 82 N. H. 220; *Tuttle* v. *Dodge,* 80 N. H. 304, 310; *Cobb* v. *Follansbee,* 79 N. H. 205, 210. This exception is therefore overruled.

The exception to the denial of the defendant's motion to set aside the verdict presents no further question of law.

*Judgment on the verdict.*

All concurred.