## MARYLAND CASUALTY CO. v. WYOMING VALLEY PAPER CO.
### No. 3123.

Circuit Court of Appeals, First Circuit.
June 25, 1936.

Jonathan Piper, of Concord, N. H. (Robert J. Peaslee and Demond, Woodworth, Sulloway, Piper & Jones, all of Concord, N. H., on the brief), for appellant.

Alexander Murchie, of Concord, N. H. (Murchie, Murchie & Blandin, of Concord, N. H., and Bernard Jacobs, of Lancaster, N. H., on the brief), for appellee.

Argued before BINGHAM, WILSON, and MORTON, JJ.

WILSON, Circuit Judge.

This is an appeal from a judgment of the United States District Court for New Hampshire in an action for negligence for failing to make a reasonable investigation of the claim of an employee of the Wyoming Valley Paper Company, which will hereinafter be referred to as the paper company, who was injured in its employ, and for failing properly to consider and accept offers of settlement by the employee within the limits of a liability insurance policy issued by the appellant, which will hereinafter be referred to as the insurance company.

The policy issued to the paper company had a $5,000 limit of liability for injury to one person. A common-law action was brought by the injured employee against the paper company in the state court, as an employee may do, although the employer may have accepted the Workmen's Compensation Statute of New Hampshire, and recovered judgment against the appellant for $10,000, which judgment was sustained by the Supreme Court of New Hampshire.

The insurance company paid the paper company the sum of $5,000 with interest and costs, and the paper company settled the judgment with the employee, and now seeks to recover in this action the excess of the judgment over the limit of the liability of the insurance company as fixed in the policy.

The policy of insurance issued by the appellant to the paper company, in addition to the usual indemnity clause, provided for

"Service II. To Serve this Employer (a) by the inspection of work places covered by the Policy when and as deemed desirable by the Company and thereupon to suggest to this Employer such changes or improvements as may operate to reduce the number or severity of injuries during work, and, (b) upon notice of such injuries, by investigation thereof and by settlement of any resulting claims in accordance with law.

"Defense III. To Defend, in the name and on behalf of this Employer, any suits or other proceedings which may at any time be instituted against him on account of such injuries, including suits or other proceedings alleging such injuries and demanding damages or compensation therefor, although. such suits, other proceed-

ings, allegations or demands are wholly groundless, false or fraudulent."

"To pay all costs taxed against this Employer in any legal proceedings defended by the Company, all interest accruing after entry of judgment until the Company has paid, tendered or deposited in court such part of such judgment as does not exceed the Company's liability thereon, and all expenses incurred by the Company for investigation, negotiation or defense."

The paper company in the first two counts of its writ alleged:

"Said defendant negligently failed to avail itself of an opportunity to settle with the said James C. Wemyss before said suit was commenced within the limits of said policy, and negligently failed to avail itself of an opportunity to settle the same after said suit was commenced within the limits of said policy. * * *"

And in a third count, added by way of amendment during the trial, alleged:

"Said defendant negligently failed to make a reasonable investigation of the facts of the said Wemyss suit, or of the law applicable thereto and therefore did not intelligently consider and pass upon an opportunity to settle said suit, within the limits of the policy before the same was commenced, which offer of settlement was reasonable under the circumstances; nor did the defendant inform the plaintiff of an offer of settlement for $7,000 made to it by the said Wemyss after the trial of his suit and before the same was decided by the New Hampshire supreme court, previous to the decision of such supreme court. * * *"

The facts on which the claim of liability is made in this case are as follows: The plaintiff-appellee is a manufacturer of paper from pulp. James S. Wemyss is president and general manager of the company and was in charge of the mill at the time of the accident. The plaintiff in the state court action, James C. Wemyss, was his son, whom he had been training in the business and who had been employed by the paper company for seven or eight years at the time of the accident. For the last two years of that period the son had the title of, or was known as, the resident manager, or assistant to his father, and had charge only in his father's absence. His chief duties were in the office attending to the correspondence, and

as salesman on the road, and to go through the mill each day when there to see if anything looked wrong and inspect the product of the mill.

There was a superintendent, Walter Wemyss, whose duty it was to look after the safety of the appliances and machinery, and to make the necessary repairs.

In the winter of 1931 James S. Wemyss bought a secondhand de-inking machine in Philadelphia, and had it taken down and shipped to the factory. The son, James C. Wemyss, had nothing to do with the purchase of the machine or setting it up in the mill, knew nothing about it except that its purpose was to convert newsprint into pulp and remove the ink therefrom. James S. Wemyss advertised for some one familiar with such machines to set it up, and get it ready for operation in the mill. In response to his advertisement, a man came from New York, who directed the setting up of the machine. He was engaged in the work from April until July in the summer of 1931.

James C. Wemyss was away on the road a large part of the time during the erection of the machine, selling the product of the mill, and again during a part of July and August he was away from the mill on a vacation. In the meantime the superintendent had not been able to operate the machine successfully.

After James C. Wemyss' return from his vacation, his father said to him: "Jim, you had better go down and get that thing along. We need the pulp badly. See what you can do."

Accompanied by the superintendent, Walter Wemyss, and some helpers, he went to the mill. The machine consisted of a beater to grind up newspapers and newsprint. The mass was then run through four series of rolls in what are known as agitator boxes, where it was washed and the ink removed. In each box was a shaft on which were paddles for agitating the mass to assist in washing it.

After watching the machine in operation, he decided it needed more water. The pulp was collecting on one of the aprons, so called, and clogging the machine. It was while he was engaged in removing this pulp that the water was turned on and one of the rolls in the agitator boxes "jumped up" and threw him off his balance and he fell into one of the agitator boxes, which had as a cover two planks insecurely laid on top, and which, it is admitted, should have had cleats on all four sides to prevent their slipping, of which lack he had no knowledge. It was this failure to provide a secure cover for this agitator box that was held to be negligence on the part of the paper company and on which his recovery of $10,000 was based. His injuries were very serious, his hospital and doctors' bills were large, and he was disabled for nearly a year before he was able to resume work.

A claim adjuster from the insurance company called on him at the hospital and went to the mill and saw the machine. After James C. Wemyss returned from the hospital, the adjuster talked with him as to compensation. Wemyss told him his expenses were very heavy and if the company would pay something beyond his expenses, he would settle, and $2,000 was suggested. The adjuster said he would report to his company and later came back and said the case only warranted payment under the compensation statute, and suggested $500. Wemyss refused to listen to the offer, but offered to settle for $2,000; said he did not want to have a suit over it. The father, James S. Wemyss, urged the adjuster to settle on this basis, but the adjuster denied there was any liability except under the compensation statute. Young Wemyss then employed counsel, who renewed the offer of $2,000, and the insurance company employed local counsel to represent it. The $2,000 offer was withdrawn and suit was brought. An offer of $4,000 was made after the trial began, and was refused by the insurance company. After the verdict of $10,000, an offer to settle for $7,000 was made to the adjuster, who evidently failed to report it to counsel or the Insurance Company.

Counsel for the insurance company took James C. Wemyss' deposition before the trial, in which Wemyss outlined his duties and how the accident occurred. Counsel for the insurance company, upon the facts given him by the adjuster, had advised the company there was no common-law liability, basing his opinion on the fact that James C. Wemyss was general manager and in full charge over the mill, and was responsible for the safety of the machinery and could not recover for his own failure to see that the cover of the agitator box was secure, and that he was negligent in walking along an iron

partition between the agitator boxes, though, as Wemyss explained, by so doing he could hold onto a truss rod and thus protect himself from falling, if nothing unusual occurred. The New Hampshire court found that James C. Wemyss was an employee of the paper company; that the paper company was negligent and the employee was not negligent.

The advice of counsel to the insurance company, therefore, that there was no common-law liability was erroneous. Was he negligent in giving such advice, or was he given erroneous information as to the facts through the negligence of the adjuster?

Counsel for defendant in his testimony in this case against the insurance company said that he understood that the facts were: That James C. Wemyss was general manager of the plant; that he had general charge of the whole thing there; that he was out there experimenting with a machine which had not yet been put into production. In the course of experimenting with it, he thought it was necessary to go and scrape away some pulp that was accumulating at the back part of the machine on an apron; that he walked out there on a narrow iron partition between the agitator boxes, and that there was more or less wet, slippery pulp on this partition; that in some way he slipped and got his leg into the agitator box where it was chewed up by the paddles; that the box was covered by two 2″ by 6″ planks laid on there in place of an iron cover which covered some of the other agitator boxes; that Mr. Wemyss was in charge of a crew of men who were having some trouble with the pump which was furnishing water to the machine; that he sent some of the men to work on this pump and get more water to the machine; that while out there working, the extra water came through faster—something of that sort, and he got his leg into the agitator box. On these facts, it was his opinion that Mr. Wemyss in his capacity as general manager and being responsible for the operation and the condition of the machinery, would himself be responsible for any negligent condition, if one existed.

Although he took James C. Wemyss' deposition, and if he had given careful consideration to it, he would have learned that James C. Wemyss was not general manager of the mill and did not have general charge of the whole thing, yet he advised his client, which, before suit was brought, could have settled for less than its maximum liability under the contract of insurance, that there was no common-law liability.

He admitted he did not do any investigating of the facts; that his opinion was formed from conversation with Mr. Whelton, the investigator, and from looking at the machine. He would say it was customary with the Maryland Casualty Company to hand him the file made up by the investigator, and not expect him to put in any time or expense; but he further testified that his opinion was formed before he had any file, on the conversation that he had with Mr. Whelton (the investigator). From some source he evidently obtained the information that James C. Wemyss was the general manager of the corporation in charge of the mill, and advised the adjuster of the insurance company upon that theory.

If he received his facts from Whelton and did not himself investigate and understood that James C. Wemyss was the general manager in full charge there, and if the insurance company did not expect him to put in any time or expense, then he acted without adequate or on erroneous information in advising that a settlement for $2,000 be refused, when proper investigation would have satisfied him that James C. Wemyss was an employee, had no previous knowledge of this machine or its operation, had nothing to do with setting it up in the mill, and did not know that the plank covers of the agitator box were not secure.

■ Clearly, we think, the jury was warranted in finding that there was negligence in the investigation and preparation of this case, if not on the part of counsel, at least on the part of the investigator and in reporting to counsel, and on the part of the insurance company in not directing its counsel to make full investigation of the facts for himself, and in not adjusting the case before or during the trial.

There was no prejudicial error by the court in refusing the request for instructions, or in giving certain instructions.

■ As to the first assignment of error based on the admission of the testimony of the attorney, Jacobs, as to whether in his opinion there was evidence to go to a jury, it related to the action by James

C. Wemyss against the paper company. The jury found there was evidence to support a verdict, and the Supreme Court affirmed it. Wemyss v. Wyoming Valley Paper Co., 86 N.H. 587, 172 A. 438. We think this evidence could not be prejudicial to the defendant, especially in view of the judge's charge in this case.

■ The defendant apparently waived its second assignment of error. The third assignment of error related to a refusal to direct a verdict for the defendant, which does not seem to be pressed in defendant's brief. Assignments numbered from 4 to 12, both inclusive, and assignments 13 and 16 are special requests that there was no negligence on the part of either the counsel for the defendant, or the investigator of the defendant in following advice of counsel, and, if correct, would have required a directed verdict.

These requests, however, were all denied, but the questions raised thereby were sufficiently covered in the charge of the judge.

■ Assignments 13 and 14 relate to a refusal of the judge to charge that the defendant acted reasonably in deciding that James C. Wemyss was guilty of contributory negligence and that there was no liability on the part of the paper company for his injuries, both of which questions had been decided against the defendant in the action against the paper company, and the jury was instructed on these points as far as they were in issue in this case on the question of negligence of the defendant or its agents.

■ Assignment 17 relates to the submission to the jury of the issue of negligence of the defendant, on the ground of its failure to accept the offer of settlement after the verdict was rendered, but the investigator testified that the offer was made to him and it was not submitted to anyone in an official capacity. The part of the charge objected to was a statement by the court of the five claims of negligence made by the plaintiff, and the judge merely suggested that the jury consider the evidence with reference to each of them. The defendant's negligence, if any, in not accepting the offer made after the verdict, was, therefore, due to the negligence of its agent in not submitting it.

Assignments 18 and 19 relate to the submission to the jury by the judge of the issue of the negligence of counsel and of the investigator in investigating the claim of James C. Wemyss. These questions were raised in the defendant's requests for instructions numbered 4 and 5, to the effect that there was no evidence in the case of negligence on the part of either counsel or the investigator. We think the judge's charge presented these issues to the jury in a manner to which the defendant could not reasonably object.

On the whole, we think the judge's charge was as favorable to the defendant as it could ask for.

The law of the case seems to be covered by the cases of Cavanaugh Bros. v. General Accident, Fire & Life Assurance Corp., 79 N.H. 186, 106 A. 604; Douglas v. United States Fidelity & Guaranty Company, 81 N.H. 371, 127 A. 708, 37 A.L.R. 1477; Bowersock v. Smith, 243 U.S. 29, 37 S.Ct. 371, 61 L.Ed. 572. It is hard to see how, in view of these cases, counsel, with full knowledge of James C. Wemyss' relation to the paper company and of the law applicable thereto, could have advised Whelton or the insurance company that there was no chance of recovery at common law.

The judgment of the District Court is affirmed, with costs to the appellee.