**Anna M. LEE, Administratrix of the Estate of Ernest Walter Lee, Late of Harford County, deceased**

v.

**NATIONWIDE MUTUAL INSURANCE COMPANY, a body corporate.**

Civ. A. No. 11530.

United States District Court
D. Maryland.

June 2, 1960.

Melvin J. Sykes and Francis D. Murnaghan, Jr., Baltimore, Md., for plaintiff.

M. King Hill, Jr., Clater W. Smith and Norman P. Ramsey, Baltimore, Md., for defendant.

R. DORSEY WATKINS, District Judge.

### Questions Presented.

The amended complaint of Anna M. Lee, administratrix of the estate of Ernest Walter Lee, (plaintiff) seeks (1) a judgment against Nationwide Mutual Insurance Company (Nationwide) in the amount of $115,675, alleged to be the damages sustained by plaintiff through the alleged negligent or bad faith failure of Nationwide to settle, within the limits of an automobile liability policy issued to Ernest Walter Lee (Lee), claims arising out of the alleged negligence of Lee; and (2) a declaratory judgment that Nationwide is liable to "reimburse" plaintiff for the amount of unsatisfied judgments against plaintiff, in excess of the policy limits, arising out of the alleged negligence of Lee whether or not plaintiff has or has not in fact discharged all or any part of said excess.

Nationwide has moved to dismiss both counts of the amended complaint on the grounds that neither states facts sufficient to constitute a cause of action.

### Facts.

The facts stated, on motion to dismiss, most favorably to plaintiff, may be summarized [1] as follows:

On January 5, 1956, Nationwide had an outstanding automobile liability policy of $10/20,000 covering personal injuries from the operation of motor vehicles by Lee, and a policy of $20/40,000 covering personal injuries from the operation of motor vehicles by Gilbert C. Mabe (Mabe). On that day, an automobile driven by Mabe was in a rear-end colli-

[1]. The first count covers fifteen typewritten legal-size pages. The court hopes its "summary" may properly be so characterized.

sion with a truck driven by Lee. Both drivers were killed. Mrs. Mabe, a passenger in the Mabe car, was badly injured.

The following suits were brought in the Circuit Court for Harford County:

(1) Against the plaintiff as Lee's administratrix:

(a) A death suit on behalf of Mrs. Mabe and her two minor children, for $150,000; (b) by Mrs. Mabe, as executrix of Mabe, for his conscious pain and suffering, property damage and for funeral expenses, in the amount of $5,000; and (c) by Mrs. Mabe, individually, for personal injuries, for $50,000; and

(2) against the administratrix of Mabe: (a) a death suit on behalf of the widow (plaintiff) and three minor children of Lee; and (b) by plaintiff as administratrix of Lee to recover for funeral expenses, and for personal injuries and property damage suffered by Lee before his death. All of the suits were consolidated, and tried together.

The plaintiffs (Mabes and Lees) were respectively represented by competent counsel of their own selection, who in turn associated with them leading trial counsel specializing in tort suits.

Nationwide was obligated to defend each of the defendants (Mabes and Lees) and their estates in the Harford County suits; and was vested with the absolute and ultimate control of such defenses, and with the exclusive right and option to negotiate with respect to possible settlement of all or any of the cases. Nation-

wide thereupon retained separate defense counsel for the two administratrices, which counsel cooperated with personal counsel for the respective administratrices solely for protecting such administratrices in their statuses as defendants.

Nationwide was directly represented by counsel of its own choosing who did not enter his appearance in any of the suits, but who received reports from the defense counsel furnished by Nationwide; was present throughout the trial; consulted with, counselled and guided the respective defense counsel provided by Nationwide; participated in all conferences and discussions with the trial judge held out of the presence of the jury; and who exclusively conducted such discussions and negotiations as there were respecting settlement.

The amended complaint alleges that "The evidence at the trial pointed overwhelmingly to the conclusion that the accident was the legal responsibility of" Lee "and that a verdict would almost inevitably be rendered holding the" plaintiff herein liable as administratrix. The facts thereafter alleged in the amended complaint would, if proved, amply support this conclusion.[2] The evidence also established that the injuries received by the Mabes were substantial, and if verdicts were received by the Mabes, the damages would be far in excess of the $10/20,000 limits of the Lee policy.[3]

Before the trial, possible settlement was discussed informally, but Nationwide's own counsel took the position that

---

2. For example, it is alleged that Lee was driving a truck loaded with logs, one of which projected at least six feet from the rear of the truck; that a few minutes before the accident, which occurred at 8:25 p. m., the truck was being driven without tail lights, rear lights, reflectors or devices warning of the truck's existence or the projection of the log; that Lee was warned of the lack of any such warning devices; that a few minutes before the accident Lee pulled off the road at a point where headlights of an approaching car would not pick up his truck, and that Lee, although aware of an approaching auto, deliberately pulled out of

his stopped position directly into the path of the vehicle operated by Mabe, who, although driving properly with an auto in proper condition, could not by the use of reasonable care avoid the collision.

Five pages of Nationwide's brief are devoted to a statement of facts directly contradictory to many of the critical ones in the amended complaint. On this motion to dismiss they cannot of course be considered; but it is worthy of note that they do not suggest any contributory negligence on the part of Mrs. Mabe.

3. Mabe at the time of his death was thirty-three years old, in good health, and earn

the Mabes' cases had no more than a nuisance value, and he was never willing to make an offer to settle in any specific amount. During the trial, personal counsel for the Mabes approached Nationwide's counsel for settlement on the basis that the Mabes would win, but that in view of the policy limits, they would give some discount, and would "settle the case (sic) for a total of $18,000.00, out of which the Mabes would take $16,000.00 and $2,000.00 would be paid the Lees." Personal counsel for the Lees "strongly urged that the offer be accepted." Nationwide's counsel "rejected the offer stating that in his opinion both sets of cases would result in defendant's verdicts since he felt that both Lee and Mabe were guilty of negligence."[4] The offer was repeated on the third day of the trial, after the cases had been submitted to the jury, but was rejected by Nationwide's counsel, and no counter-offer was made.

The jury, after deliberating approximately two and one-half hours, returned verdicts for the Mabes totalling $135,125, apportioned, in the death suit, $51,000 for Mrs. Mabe and $33,000 for the two infants; $1,125 for conscious pain and suffering and funeral expenses; and $50,000 to Mrs. Mabe for her personal injuries.

Nationwide filed no motions for new trial or for judgment n. o. v., and took no appeal, but paid and credited on the judgments $19,450, being the policy limits less $550 paid in the settlement to an injured passenger in the Lee truck. Thereafter, the personal attorney for the Mabes "formally demanded that plaintiff pay in full the entire sum of $115,675.00, representing the difference between the full amount of the judgment and the amount paid by the defendant insurance company, with interest as provided by law." Plaintiff notified Nationwide of the demand. Nationwide has denied liability.

The amended complaint also alleges that "the instant suit is brought pursuant to express authorization therefor by the" Orphans' Court of Harford County.

The first cause of action of the amended complaint concludes as follows:

"25. The plaintiff desires to wipe out the cloud on the good name of her deceased husband, Ernest Walter Lee, and her family by paying the judgments rendered against her, and respectfully represents that she will apply the proceeds of her recovery herein to the payment of the said judgments. Plaintiff further alleges that she has suffered loss and damage as a direct result of the said judgments. As indicated by the inventory dated January 13, 1956, filed by her in the estate of Ernest Walter Lee, deceased, in the Orphans' Court of Harford County, there were total assets in the said estate of $3,117.11, of which $2,217.11 consisted of moneys in bank or building and loan associations, and $900.00 constituted the net value of a 1954 four-door sedan automobile. The estate, except for the judgments herein complained of, was fully solvent, and all expenses and disbursements, including funeral expenses, court costs, administratrix's commissions, tax on commissions, and debts due by the decedent, amounted to $1,675.63, leaving a net total of $1,441.48, which would have been available for distribution over and above all lia-

---

ing $3,300 a year. His wife was twenty-nine years old. Their joint life expectancy was thirty-three years. Their two children were six, and two and three-quarters years of age.

Mrs. Mabe was unconscious for four days; was hospitalized twenty-four days; required assistance for four months; sustained severe shock; severance of tendons and nerves of the left hand involving 40 per cent permanent partial disability of the hand; dislocation of a cervical vertebra; and disfiguring facial and other scars.

4. Note that the basis of this conclusion—negligence of both Lee and Mabe—even if sound would not bar recovery by Mrs. Mabe personally against Lee, which on the statement of facts woud reasonably be well in excess of $10,000.

bilities and obligations of the estate in the absence of the entry of the judgments herein complained of. On February 28, 1957, while the Mabe suits were pending against the plaintiff herein as administratrix of the estate of Ernest Walter Lee, the said proceedings being fully known to the instant plaintiff, who had been duly summoned therein, the plaintiff filed her first and final account as administratrix of the estate of her decedent, which distributed the said sum of $1,441.48, less only inheritance taxes of 1%, to the beneficiaries of the estate, including three infant children of the decedent and the instant plaintiff. As the direct result of the entry of the judgments herein complained of, the plaintiff is and will be liable to the Mabes for the amount distributed through the estate of Ernest Walter Lee; and neither the plaintiff, who has personal assets out of which such amount may be made nor the estate will be in a position, so long as the said judgments are outstanding, to escape liability or to distribute free of encumbrances the net sum of $1,441.48, less inheritance taxes as aforesaid, which the estate and plaintiff as administratrix would have been able to distribute over and above all debts, obligations and expenses of the said estate had not the said judgments been entered against the plaintiff as administratrix. Plaintiff alleges that said judgments against her in excess of the insurance policy limits are a result of the defendant's tortious conduct as aforesaid, and that the defendant is responsible to her to the extent of the difference between the amount of the said judgments and the moneys heretofore paid on account thereof by the defendant, together with necessary related expenses, interest and costs."

## Contentions of the Parties.

Plaintiff contends that the facts alleged show that Nationwide failed to exercise reasonable prudence, and was guilty of bad faith, in failing to settle within the policy limits; and that mere entry of judgment against plaintiff, regardless of whether plaintiff has paid or can pay all or any part of the judgment in excess of the policy limits, entitles plaintiff to a judgment against defendant for the full amount of such excess.

Nationwide contends that no good faith offer of settlement was made to it; that Nationwide's failure to settle was not negligent or in bad faith; and that even if Nationwide breached its duty toward plaintiff, plaintiff has suffered no recognizable or compensable loss, injury or damage.

## Discussion.

(1) Duty to protect insured by settlement.

■ An insurer is not obligated to accept an offer merely because it is within the policy limits. As our Fourth Circuit Court of Appeals said in American Casualty Company of Reading, Pa. v. Howard, 4 Cir., 1951, 187 F.2d 322, 329:

"Accordingly, when the insurer fully lives up to its duty, there is no right in the insured to compel the insurer to offer the amount of its maximum limit in order to effect the amicable settlement of a claim against the insured and to protect the insured against a possible judgment in excess of the policy limit. Insured can readily secure all needed protection by purchasing, and paying for, a policy with a high limit of liability on the insurer."

However an insurer is obligated to exercise a reserved power to negotiate and settle with proper regard for the interests of the insured, and is liable for damage resulting from wrongful failure to settle within policy limits. Notes, 71 A.L.R. 1485, 131 A.L.R. 1500, 40 A.L.R. 2d 168, 7 N.C.C.A.3rd 306; Frederick J. Green, Jr., Liability Of Insurance Companies For Judgments In Excess Of Policy Limits, The Daily Record, October 20, 1958; Lewis, et al., Insurer's Liability To Insured For Judgments In Excess

Of Policy Limits, 7 Drake L.Rev. 23; Keeton, Liability Insurance and Responsibility For Settlement, 67 Harv.L.Rev. 1136; Appleman, Conflicts in Injury Defenses, 1957 Insurance Law Journal 545.

(2) Opportunity to settle within policy limits.

Nationwide strenuously urges that no bona fide offer of settlement of the Lee cases was made. It contends that the proposal recited, to settle for $18,000 of which $2,000 would be paid to the Lees, was not a true offer, since under no circumstances could there be verdicts in favor of all the plaintiffs in both suits. Nationwide also contends that no opportunity was afforded it to settle the Mabe cases apart from the Lee cases; or to settle Mrs. Mabe's personal claim within the policy limits of $10,000.

In the opinion of the court, Nationwide's position on this point is unsound. In effect, Nationwide knew that the entire litigation in which both of its insureds were involved could be settled for $18,000—within the Lee policy limits. Ergo, the Mabe suits could so be settled. If the Mabe suits should have been settled for $18,000, the disposition of that amount (vis à vis the Mabe plaintiffs, or their use of part thereof to buy peace with the Lees) was of no controlling concern to Nationwide. If Nationwide believed that although "the price is right", a better bargain could have been negotiated, it should at least have tried so to negotiate. If Nationwide believed it could defeat all claims except those of Mrs. Mabe, it should at least have asked that an offer of settlement of that claim be made.

In short, Nationwide knew that the Lee's potential liability could be settled within the Lee policy limits. While it could justify failure to settle if in good faith and without negligence it concluded the amount was too high, it cannot justify its refusal to settle upon grounds that the settlement offer was not technically apt, or to its liking.

(3) Breach of duty.

The facts alleged in the amended first cause of action are sufficient to assert a breach of duty by Nationwide in that the probability, amounting almost to a certainty, that the Mabes would recover against plaintiff, and that such recovery would far exceed the Lee policy limits, together with the opportunity to settle below the policy limits, made the failure so to settle a breach of the duty owed by Nationwide to plaintiff, whether that duty be phrased in terms of reasonable care, or of good faith.

(4) Damages to plaintiff.

There is a definite split of authority as to whether, assuming a breach of duty to settle, followed by recovery against the insured of a judgment in excess of the policy limits, the insurer thereupon becomes obligated to pay the insured the amount of such excess; or whether the insured can recover only when, and to the extent that, he has discharged the judgment against him, or to the extent that it could be realized out of his assets.

Plaintiff urges that a "comprehensive and cogent analysis * * * and a fundamental and authoritative grappling with the basic question here presented * * * would be a signal service to the bar and the public." Tempting as are the bait [5] and the challenge, the court is content to restrict its efforts to the attempted solution of the specific case before it.

In this case, plaintiff does not allege that any pecuniary or financial loss has occurred, or will occur, to plaintiff either individually or as administratrix. She has distributed in full the net assets of the Lee estate after payment of creditors (other than the Mabes) and she has paid nothing on the Mabe judgments. There is no allegation of suit having been filed, or that threat of suit has been made, by the Mabes against plaintiff.

(1) Authorities allowing recovery without any payment by Plaintiff.

The trend of the recent decisions has generally, although not uniformly, been

---

5. The implication that this court's "grappling" would be "authoritative."

to allow recovery in a suit by an insured plaintiff based merely upon entry of a judgment, after breach of the insurer's duty of settlement, against plaintiff in excess of the policy limits, regardless of whether the insured has paid or can pay any or all of the judgment above the amounts of the policy limits. In support of this, plaintiff cites: Alabama Farm Bureau Mutual Insurance Co. v. Dalrymple, 1959, 270 Ala. ——, 116 So.2d 924; Henke v. Iowa Home Mut. Cas. Co., 1959, 250 Iowa 1123, 97 N.W.2d 168; Wessing v. American Indemnity Co., D.C. Mo.1955, 127 F.Supp. 775; 10 Ark.L.Rev. 139; Farmers Ins. Co. v. Henderson, 1957, 82 Ariz. 335, 313 P.2d 404; Brown v. Guarantee Ins. Co., 1958, 155 Cal.App. 2d 679, 319 P.2d 69, 66 A.L.R.2d 1202; Comunale v. Traders and Gen. Ins. Co., 1958, 50 Cal.2d 654, 328 P.2d 198, 68 A.L.R.2d 883; Alford v. Textile Ins. Co., 1958, 248 N.C. 224, 103 S.E.2d 8; Southern Fire & Cas. Co. v. Norris, 1952, 35 Tenn.App. 657, 250 S.W.2d 785 (cert. den. by Tennessee Supreme Court 1952); Linkenhoger v. American Fid. & Cas. Co., 1953, 152 Tex. 534, 260 S.W.2d 884, (but see Universal Auto Ins. Co. v. Culberson, Tex.Civ.App.1932, 54 S.W.2d 1061, affirmed 1935, 126 Tex. 282, 86 S.W. 2d 727, 87 S.W.2d 475); and Schwartz v. Norwich Union Indemnity Co., 1933, 212 Wis. 593, 250 N.W. 446.

Whether or not the Wessing, Henderson, Alford and Linkenhoger cases do or do not in fact, and if so to what extent, support plaintiff's position, can more profitably be considered after an exploration of the rationale allowing, or denying, recovery dependent upon whether or not the insured has paid all or any part of the excess judgment.

The theory of the cases permitting recovery without prior payment by plaintiff is adequately set forth in the following quotations.

Southern Fire & Cas. Co. v. Norris, 1952, 35 Tenn.App. 657, 250 S.W.2d 785, 791 (cert. den. by Tennessee Supreme Court, 1952):

"The contrary view, while logical in the abstract, only serves as a windfall to an insurer fortunate enough to have insured an insolvent. The insurer in such a case stands in the position of having been derelict in the performance of its duty under a policy for which it accepted a premium paid by the insured in good faith. The liability, though ex delicto, as we have seen, arises out of the contract. If the insured had not felt the need of the protection offered by the policy and the services of the Company in handling claims against him it is to be assumed he would not have taken the policy. The claim is now an adjudged liability which he can escape only by a discharge in bankruptcy or by payment. If he chooses the former course his credit is impaired. If he does not the outstanding judgment against him is likely to prove an insurmountable barrier to payment. If prepayment is required in cases of this kind the insurer is likely to be less responsive to its trust duties in cases where the insured is insolvent than in cases where the insured is able to discharge any judgment in excess of the policy limit which may be rendered against him."

Schwartz v. Norwich Union Indemnity Co., 1933, 212 Wis. 593, 595, 250 N.W. 446:

"One who has been subjected to a judgment by reason of fraud practiced upon him by another standing in the relation of insurer is entitled to relief even though he has not paid the judgment. A cause of action in his favor arises and his damage occurs when the liability becomes thus fixed. Neither the right of action nor the measure of damages depends upon the fact of payment. It is enough if by reason of the appellant insurer's fraud the respondent must submit to a liability to pay and the precise sum which he is liable to pay is known, or ascertainable, for then there is no difficulty in fixing the amount of damages. Liabilities resulting from tortious acts are in-

cluded in damages when they become certain. And borrowing a phrase from 2 Sutherland on Damages, p. 615, in his Treatise on the Law of Damages, embracing the elementary exposition of the law applicable to particular subjects of contract and tort published in 1884, he is 'to be morally and legally exonerated by payment; not merely to be indemnified in a perpetual delinquency to his creditor.'

"The judgment constitutes a legal injury to the judgment debtor regardless of failure of payment previous to the action. A discussion of the liability of a tort-feasor for expenses incurred by reason of an injury in 8 R.C.L. 500, applies to this situation and the cases there cited sustain the rule that previous payment is not essential to recovery; such expenses having been made necessary by the tort-feasor's neglect of duty. 'The liability of a defendant in an action of tort for expenses incurred by the plaintiff by reason of an injury, rests on the ground that such expenses have been rendered necessary by the defendant's neglect of duty; and that liability is not altered by the circumstance that the plaintiff has not, in point of fact, paid such expenses at the time of the trial of his action against the defendant. And so it is immaterial what arrangement the plaintiff may have made for the payment of such expenses or whether he ever pays them, provided only that a legal liability to pay them exists. Therefore if the plaintiff has properly pleaded his special damages, and given proof in support of his pleading, he is entitled to have the jury consider, in fixing his damages, the liability which he is under by reason of such expenses, although he has not, as a matter of fact, paid them.' "

Henke, Administrator v. Iowa Home Mut. Cas. Co., 1959, 250 Iowa 1123, 97 N.W.2d 168, 180–181:

"There have been discussions in several recent cases as to the question of the amount of damages to which an insured is entitled in case of excessive verdicts above policy limits. There were two rather early decisions which held that before the insured could collect from the insurer he was obligated to pay the judgment * * *. The general holding in these two cases was to the effect that as long as the insured had not paid out anything he was not hurt.

"However, the more recent cases and the present overwhelming weight of authority now is that in cases of bad faith the insured can collect even though he has not paid the judgment * * *.

"Appellant contends that because the insured is dead a different rule applies. If he were alive he might be hounded by his creditors until expiration of statute of limitation. Appellant contends such procedure is not in effect since he has passed away. Under the case of Brown v. Guarantee Indemnity Company, supra, this theory has no value. Furthermore, there is only one way the administrator can distribute the balance in the Townsend estate to his heirs and that is through full payment of the judgments against the estate."

(2) Authorities denying recovery unless, and to extent of, payment by insured.

Nationwide points out that the action for alleged negligence or bad faith in failing to settle is a tort action, not a suit on the insurance contract. This is not contested by plaintiff. See: Fidelity & Casualty Co. v. Gault, 5 Cir., 1952, 196 F.2d 329; American Fidelity & Casualty Co. v. All American Bus Lines, Inc., 10 Cir., 1951, 190 F.2d 234; Kleinschmidt v. Farmers Mutual Hail Ins. Ass'n, 8 Cir., 1939, 101 F.2d 987; Attleboro Mfg. Co. v. Frankfort Marine Acc. Ins. Co., 1 Cir., 1917, 240 F. 573; Norwood v. Travelers Ins. Co., 1939, 204 Minn. 595, 284 N.W. 785, 131 A.L.R. 1496; Zum-

waldt v. Utilities Ins. Co., 1950, 360 Mo. 362, 228 S.W.2d 750; 71 A.L.R. 1485; 131 A.L.R. 1499; 40 A.L.R.2d 168; Insurance Law Journal, June 1958, 405; January 1955, 37. From this it is argued that no cause of action arises against an insurance company until the insured has sustained some financial loss or injury.

Generally, and specifically as to the Maryland law on general principles of tort liability. Nationwide cites the following language of the Maryland Court of Appeals in Richardson v. Boato, 1955, 207 Md. 301, 304, 114 A.2d 49, 51:

> "One may not recover in tort unless the defendant has violated a legal right of the plaintiff which has caused him injury. In the invasions of person or property for which trespass was the remedy, injury was presumed from the violation of the absolute legal right. In the deceit and negligence cases, actual injury had to be shown to make an actionable wrong."

On the particular point at issue in this case, great reliance is naturally, and properly, placed on the language of Chief Judge Parker in State Automobile Ins. Co. v. York, 4 Cir., 1939, 104 F.2d 730, 734, certiorari denied 1939, 308 U.S. 591, 60 S.Ct. 120, 84 L.Ed. 495:

> "* * * Furthermore, it does not appear that insured was in any way damaged by the company's refusal to settle, as he had not paid the judgment against him and testified that he never expected to pay it." [6]

Judge Parker's statement has not generally been considered as dictum, but as a direct holding, Alabama Farm Bureau Mutual Insurance Co. v. Dalrymple, 1959, 270 Ala. ——, 116 So.2d 924; Brown v. Guarantee Ins. Co., 1958, 155 Cal.App.2d 679, 319 P.2d 69, 75; Duncan v. Lumbermens Mutual Ins. Co., 1941, 91 N.H. 349, 23 A.2d 325, Dumas v. Hartford Accident and Indemnity Co., 1942, 92 N.H. 140, 26 A.2d 361. Whether it be dictum or not, it would suffice for this court as indicating the Fourth Circuit's position, unless there is anything in Maryland law to the contrary.

The position of the Fourth Circuit, and of New Hampshire is also that of the Fifth Circuit (Alabama), American Mutual Liability Ins. Co. v. Cooper, 5 Cir., 1932, 61 F.2d 446; Oklahoma, Boling v. New Amsterdam Casualty Co., 1935, 173 Okl. 160, 46 P.2d 916; Minnesota (dictum), Norwood v. Travelers Ins. Co., 1939, 204 Minn. 595, 284 N.W. 785, 786, 131 A.L.R. 1496; Texas Universal Auto. Ins. Co. v. Culberson, 1935, 126 Tex. 282,

6. Although plaintiff relies heavily upon the statement that the judgment debtor-insured did not intend to pay the judgment, as a ground of distinction (citing Insurer's Liability to Insured for Judgments in Excess of Policy Limits, 7 Drake Law Rev. 23, 33, and Wessing) of the York case from those allowing recovery to the insured, although no payment has in fact been made by insured, the court does not see the pertinency of a plaintiff's intent. If the hurt arises from (i) the mere entry of the judgment (Wessing, Norris, Henderson, Henke) the hurt has been sustained; if the theory is —to which this court does not subscribe— (ii) that the right is substantially that of the judgment creditor (Brown and Comunale—California), the whim of plaintiff should be immaterial; and if the theory is (iii) harm to decedent-insured's "good name", that harm would, if anything, be augmented by insured's intention not to pay.

Further, as is insisted by plaintiff herein, if plaintiff recovered against Nationwide, that recovery, unless dissipated, would be subject to attachment on judgment, regardless of plaintiff's wishes, desires or intention.

This contention, that plaintiff's intention is material, seems to this court as significant against the right to recover merely upon entry of judgment, without payment, and to favor recovery only upon payment in whole or in part. It points up the fact that plaintiff is lord of the litigation. If he does not choose to sue, the creditor is remediless. Hence plaintiff can bargain with the judgment creditor, and well force an agreement for the judgment creditor to accept less than full payment of the judgment in satisfaction thereof, leaving the excess between the recovery by insured and payment to the injured party as a "windfall" to plaintiff.

86 S.W.2d 727, 87 S.W. 475, reversing on this point, Tex.Civ.App.1932, 54 S.W.2d 1061; and see Dotschay v. Nat. Mut. Ins. Co., 5 Cir., 1957, 246 F.2d 221, on remand.[7]

In addition to the statement in York, the underlying theory of these courts is expressed by the New Hampshire court as follows (Dumas v. Hartford Accident & Indemnity Co., 1942, 92 N.H. 140, 26 A.2d 361, 362):

"A right of action for negligence accrues only when the plaintiff has suffered an injury. The possibility of injury is not injury itself * * * the injury will remain merely possible and conjectural until the plaintiff has paid the excess judgment * * * or at least until his financial status is such that the excess judgment is sure to be collected * * *. The mere existence of an outstanding judgment, which may never be paid, is not a legal injury, for the essence of the injury in such a case is pecuniary loss * * *. What the plaintiff owes may reduce the appearance of his net worth on an accountant's balance sheet, but unless he pays his debt he is not out of pocket. The declaration is insufficient in alleging only a debt, and states no present cause of action."

The language of Professor Keeton, Liability Insurance and Failure to Settle, 1954, 67 Harvard L.Rev. 1136, 1179, although primarily directed to the case of an insolvent insured, rather than to one having net assets [as here, before distribution of the estate] of about one per cent of the excess judgment, is pertinent as indicating the "nonresponsible arbiter" position of persons such as plaintiff herein. Keeton says:

"A rule permitting such full reimbursement, when combined with the rules that payment is a prerequisite and that claimant cannot recover directly against company, would present an insolvent insured with the opportunity to affect the interests of claimant and company at his whim, according to which of them he prefers to benefit or harm. If insured is not judgment-proof, recovery under the doctrine of excess liability clearly should not be defeated by the fact that the money with which the claimant's judgment was paid off was borrowed in order to avoid the disruption of insured's business affairs that would result from levy of execution. But if an insured who cannot be forced to pay (because he does not have assets subject to execution) is permitted to borrow money for that purpose (either with or without the benefit of a declaratory judgment) and thereafter obtain reimbursement from company above policy limits, then he is in the position of a nonresponsible arbiter of the conflicting interests of two other parties, claimant and company. He may do nothing (thereby favoring company) or he may borrow or otherwise arrange for payment of claimant's judgment (thereby favoring claimant and subjecting company to a duty of reimbursement).

7. A complaint in two counts had been brought, the first for the use of the injured party in the original action between the injured party and the insured; and the second by the insured individually. The district court held that there was no right to bring the suit for the use of the injured person; and that the cause of action on behalf of plaintiff individually did not accrue until the plaintiff had satisfied the judgment against him. The district court dismissed the first count with prejudice, and the second count without prejudice to the right of the insured to bring suit after payment had been made. The decision was reversed without expression of opinion on the merits, but so that the district court might enter a declaratory judgment as to insured's rights.

Counsel for Nationwide in their brief state that they have been in correspondence with counsel for defendant in that case, and have been advised that on remand, the district court "entered an order to the effect that the plaintiff [insured] could state a cause of action in the event that any part of the excess judgment was paid." This is not controverted by counsel for plaintiff herein.

If he is allowed to borrow from a third party, then what of 'borrowing' from claimant? Can the requirement of payment be evaded by insured's 'paying' with a promissory note or a check not presented for payment? Surely the court should be concerned with substance instead of form, and should not permit the requirement of payment to be evaded by use of a promissory note or a check which is held by the payee instead of being presented and paid. Such a check or note is simply another form of recognition of an obligation already existing under the judgment."

The Wessing, Henderson, Alford and Linkenhoger cases.

Wessing v. American Indemnity Co., D.C.Mo.1955, 127 F.Supp. 775, 780.

The decision by then District Judge, now Justice, Whittaker, refers to the language of Chief Judge Parker in the York case, supra, that an insured who has not paid a judgment against him does not show damage, as obiter; but holds that under Missouri law, if the insurance company breached its duty to exercise good faith in respect of settlement, "then it became liable to plaintiffs, the insureds, for at *least nominal damages*, even though there be no proof of actual damages or loss suffered by plaintiffs [citation omitted], and, for this reason, alone, defendant's motion to dismiss (for want of allegation of damage), cannot be sustained." (Emphasis in opinion). Is not, then, the balance of *that* opinion obiter?

Farmers Insurance Co. v. Henderson, 1957, 82 Ariz. 335, 313 P.2d 404.

Defendant insurer had an opportunity to settle within the public liability and property damage limits of its policy, but in bad faith failed to settle. The jury brought in a verdict for $18,284 against the insured. Defendant appealed. Insured was unable, and defendant refused, to file a supersedeas bond. Insured's business property, a laundry operation, was levied upon and sold for $4,000.

Thereafter defendant settled the judgment for $6,200, of which $4,000 was paid to insured, who was not charged the appeal cost of $1,000.

Insured then brought suit against insurer. The trial court, over defendant's objections, granted damage instructions allowing recovery for loss of property as a going concern, humiliation, pain and suffering, attorney's fees, loss of earnings, expenses, including traveling expenses, incurred in seeking employment, and for loss of business reputation and credit.

On appeal the court held that the recovery could be had only for the value of plaintiff's business as a going concern, and interest thereon.

To this court, the case appears as one in which plaintiff was to be allowed recovery for that which had been taken from him and applied to the judgment. It is more nearly a suit for an amount paid by plaintiff on the judgment than it is a suit based merely upon an obligation to pay a judgment.

The case would also seem to be inconsistent with allowing recovery of a judgment to "wipe out a cloud" on a "good name."

Alford v. Textile Ins. Co., 1958, 248 N.C. 224, 103 S.E.2d 8.

Insured's policy with the insurer had limits of $5,000/$10,000. Insured was involved in a multiple party accident. All claims except that of injured plaintiff were settled for an aggregate of $6,825. Plaintiff recovered a judgment of $25,000 against insured. The insurer paid $3,175 into court to be applied as a credit on that judgment. Plaintiff sued the insurance carrier for $5,000, claiming that each injured person had a $5,000 coverage, which insurer could not prejudice by a "preferential settlement." The trial court entered judgment for $3,175 [$10,000 less $6,825] plus interest from date of judgment against the insured to the date of deposit of the $3,175 in court. This was affirmed on appeal.

The case was therefore one to enforce the policy within its written limits; it

was not a suit by the insured to recover the amount of a judgment in excess thereof. The plaintiff herein relies upon the following language (103 S.E.2d page 12):

" * * * If the insurer had failed to make these settlements, and judgments for greater amounts had been obtained against its insured; it would, we think, be liable to Washington [insured] for such amounts as the judgments exceeded the amounts for which the insurer could have settled. Wynnewood Lumber Co. v. Travelers' Ins. Co., 173 N.C. 269, 91 S.E. 946; State Automobile Mutual Ins. Co. v. York, 4 Cir., 104 F.2d 730; Wilson v. Aetna Casualty & Surety Co., 145 Me. 370, 76 A.2d 111; Douglas v. United States Fidelity & Guaranty Co., 81 N.H. 371, 127 A. 708, 37 A.L.R. 1477; Hall v. Preferred Accident Ins. Co., 5 Cir., 204 F.2d 844, 40 A.L.R.2d 162, and annotations; 45 C.J.S. Insurance § 936, page 1069; 5A Am.Jur. 115. The liability so imposed on the insurer would not, we think, be affected or diminished by the question of solvency or insolvency of its insured. Southern Fire & Casualty Co. v. Norris, 35 Tenn.App. 657, 250 S.W. 2d 785; Schwartz v. Norwich Union Indemnity Co., 212 Wis. 593, 250 N. W. 446."

This language was used in answering the argument of the plaintiff in that case that settlements should not have been made with others, thus cutting plaintiff's recovery below $5,000. The above answer by the court was that the insurer was not only justified in making the settlements, but was subject to a potential liability if it did not make them.

The Wynnewood, Wilson, Hall and Douglas cases (as to the Douglas case, see Duncan v. Lumbermens Mutual Ins. Co., 1941, 91 N.H. 349, 23 A.2d 325, 326) were all instances in which insured plaintiff had satisfied the excess of the judgment over the policy coverage. York is cited with approval.

Linkenhoger v. American Fid. & Cas. Co., 1953, 152 Tex. 324, 260 S.W.2d 884.

Plaintiff-insured had paid off the excess after the judgment in the suit against him by the injured party became final. In his suit against the insurer, the claim was made that limitations began to run with the rejection by insurer of the last offer of settlement by the injured party. This contention was rejected, the court saying (260 S.W.2d 885–886):

"The opinion in the case of Universal Automobile Insurance Co. v. Culberson, 126 Tex. 282; 86 S.W.2d 727, clearly supports petitioner's contention. Culberson had brought suit against his insurer for the entire judgment rendered against him, including that portion over and above the policy limit. *The court held that as to such excess Culberson could maintain no action against the insurer until he had paid some portion thereof.*" (Emphasis supplied.)

The cited Culberson case was a decision of the Texas Commission of Appeals. Its opinion, which was "adopted by the Supreme Court" (86 S.W.2d at page 731), expressly holds (reversing a holding of the Court of Civil Appeals to the contrary) that the insured could not sue on the judgment against him "until he has paid the same or some portion thereof, and then only to the extent he has paid * * *" (86 S.W.2d 730); that he could not recover "until he has paid some sum on the judgment in excess of the $5,000 limit in the policy; and then only to the extent of his payment." (86 S.W.2d 731).

This clearly puts Texas on the side of Nationwide in its contention in the instant suit.

In addition to the statement of the Maryland Court of Appeals in the Boato case, supra, there should be considered its holding in United States Fid. & Gty. Co. v. Williams, 1925, 148 Md. 289, 129 A. 660. A judgment against insured had not been paid by the insurance company, because of its reliance upon certain pol-

**icy** defenses. An attachment was laid by the injured party in the hands of the insurance company, purportedly under the provisions of the policy, which insured the assured "against loss and/or expense * * * resulting from claims upon [him] for damages in consequence of an accident." The court held for the insurance company "(F)or the reason that the appellant is not indebted to Price [the insured] in the amount of the judgment *unless and until Price has suffered loss by payment of the judgment.*" (148 Md. at page 309, 129 A. at page 667; emphasis supplied).[8]

This court has considered, but does not deem persuasive, the supposed analogy of holdings such as Plank v. Summers, 1954, 203 Md. 552, 102 A.2d 262, that the amount of recovery from a tortfeasor for hospital and medical expenses is not diminished by the fact that the injured party did not pay the expenses, or had insurance to cover them, or that they were furnished gratuitously. Apart from the apparent recognition that the result in that case could be reached on the ground that gratuitous medical and hospital services to members of the Armed Forces might be in the nature of an implied contract, or fringe benefits, in such cases the *plaintiff* received some benefit from these services, and they were required by the injuries to plaintiff for which defendant was found to be responsible. The only question was the right to deduct collateral benefits from the damages occasioned plaintiff by defendant. No such question is presented here. Moreover, in such cases the incurring of expenses is not the basis of the cause of action, but is at most in the nature of consequential damage.

More nearly analogous is the right of contribution or indemnity, which arises only upon, and to the extent of, payment by the one jointly or secondarily liable. Note, 72 Harv.L.Rev. 568, 569; American Law Institute, Restatement of Restitution, sections 77, 82, 85; United Gas Corp. v. Guiltory, 5 Cir., 1953, 206 F.2d 49; Northwest Airlines, Inc. v. Glenn L. Martin Company, D.C. Md.1958, 161 F.Supp. 452, and cases cited therein.

### Conclusion on Count I.

█ (1) Were the court inclined (which it is not) in this case to be technical, it could probably dispose of the case adversely to plaintiff on the ground that plaintiff alleges she sues because she "desires to wipe out the cloud on the good name of her deceased husband." Obviously, Nationwide did not issue a policy on the "good name" of its insured; even if it did, the death of insured would eliminate any right of recovery thereafter; and in any event, the amount of the excess judgment has no reasonable relationship to the harm done to such "good name." Perhaps it is useless, or even unwise, to speculate upon the measure of damages if any were re-

---

**8.** The Maryland Court of Appeals held that the injured party could, under the insolvency provision of the policy, maintain a direct action against the insurance company for the amount of the judgment the injured party had recovered, not to exceed the amount of the policy (148 Md. at pages 308–309, 129 A. 660); but could not lay an attachment in the hands of the insurance company for the reason quoted above.

The court also held that the policy there construed, insuring the assured "against loss and/or expense, arising or resulting from claims upon the assured for damages * * *" was a contract of indemnity against loss, rather than one to indemnify against liability. Hence, as insured had not paid anything, he had suffered no loss.

The policy involved in this suit has not been filed. As the suit, however, is not on the policy but is in tort, the policy provisions would not be controlling on the questions raised by this suit. If they made the policy one of indemnity against liability, that liability would be limited to the face amount of the policy. If the policy were one of indemnity against loss, so that no suit could be brought on it by insured until payment were made, or by the injured party in any event (except for insolvency provisions), a fortiori no suit could be brought by insured because of an excess judgment until, or to the amount that, such judgment had been paid by insured.

coverable in such a case. The possibilities are almost limitless. Presumably the posited "reasonable man" would look derogatorily upon the insured only if, although able, he failed to pay his just debts. In this case, the ability of insured, unaided, was, after payment to other creditors, only $1,441.48—an amount below the jurisdiction of the court.

What was the value of this "good name" if Nationwide had settled at or under the policy limits of $10/20,000?

What was the value of this "good name" if Nationwide, in good faith and reasonably, failed to settle within the policy limits, regardless of the amount of recovery?

What was the value of this "good name" if Nationwide in good or bad faith, failed to settle within the policy limits, but after judgment either insured's estate and/or Nationwide settled for less than, exactly, or more than any amount in excess of the coverage?

Further—could not the amount of harm from "the cloud on the good name" of insured exceed, or be less than, the amount of the excess judgment? Is such harm, or cloud, exactly equal to the amount unpaid by insured, because of his financial inability to pay? Who creates this "cloud"? Is it limited to the Mabes; or does it apply to the community generally, who think less of a debtor who does not pay his debts (although unable to do so) than of one who does? And if so, by how much?

Further, the Mabes were willing to settle for $16,000 to them. Then how much is needed to dissipate this "cloud" as to them, or as to the family of insured, or members of the public generally?

The court believes that the alleged "cloud on the good name of" insured is more nearly in the nature of a smoke screen than a cloud; and rather tends to point up the necessity of dealing in terms of pecuniary loss, which if less exciting is also less "nebulous."

(2) Apart from the foregoing, the court also reaches the conclusion that in this case no action can be maintained until some payment has been made by plaintiff. While the court is fully sympathetic with the viewpoint that an insurance company should not be permitted a "windfall", and particularly, that its diligence in the defense and/or settlement of a claim or case should not be in inverse relation to the solvency of the insured, it is even more convinced that *in this case* no recovery should be allowed until plaintiff has proved some actual damage. This conclusion is reached because (at the risk of partial repetition), the court is not satisfied that plaintiff will ever be financially harmed by defendant's alleged breach of duty; nor has there been any showing, if such financial detriment does in fact occur, as to the amount thereof; nor as to the ultimate effect upon the judgment-creditor Mabes.

(a) The Mabes have already received more than the amount for which they were willing to settle their cases.

(b) The Mabes have not sued the plaintiff, nor even threatened suit, because of the distribution of the assets of the Lee estate without payment to them.

(c) If the claimed excess of $115,675 were paid to plaintiff there is no assurance that the total thereof (presumably less attorneys' fees and court costs). would be paid to the Mabes by plaintiff:

(i) Plaintiff paid nothing to the Mabes out of the (small) net assets of the Lee estate;

(ii) The Mabes would have accepted $16,000 gross in settlement of their total claims;

(iii) The control of this (and any other) litigation for recovery against Nationwide is entirely within the hands of plaintiff.

(iv) An agreement between the Mabes and plaintiff as to the allocation of any recovery would be understandable (whether or not the court would or would not, if permitted, approve the ethics thereof). The difference between $16,-000 and $115,675, with or without attorneys' fees, is so great, that the bar-

gaining range, with financial benefit both to the Mabes and plaintiff, is tremendous.

(v) To the court an entirely reasonable area of negotiation exists between the Mabes and the plaintiff as to the allocation of attorneys' fees as to this and any ancillary litigation.

(vi) There is the risk of dissipation of the proceeds of any judgment herein before it could be reached by the Mabes.

To the extent that any payment is made by plaintiff to the Mabes, the foregoing ambiguities would be eliminated. Whether or not this would lead to an "escalator" [9] situation (in which, as each recovery were obtained by plaintiff, it was paid to the Mabes, thus representing an additional "loss", giving rise to a further action for indemnity or "reimbursement") likewise can pragmatically and irrefutably—as distinguished from speculatively—be demonstrated by *what* occurs, and *when* it occurs—if ever.

The court sees no reason to guess as to the situs of any "windfall" from recovery or non-recovery by plaintiff on a policy written to protect plaintiff's decedent, not the injured party; particularly where the alleged breach was of a duty owed only to plaintiff's decedent. The court therefore sustains the motion of Nationwide to dismiss the first count of the amended complaint, since there is no allegation that plaintiff has sustained, or will sustain, pecuniary loss as a result of Nationwide's alleged breach of duty.

### Second Count.

Nationwide forcibly argues that no case for a declaratory judgment lies where a plaintiff's cause of action has not accrued, and where no damage or harm has accrued, and none will result except by plaintiff's own voluntary action; that in such case there is no actual controversy," citing Aktiebologet Bofors v. United States, D.C.D.C., 1950, 93 F.Supp. 134; and that declaratory judgments in tort actions are not given in cases of completed torts; Declaratory Judgments; Declaratory Judgment in Cases of Completed Torts, 1952, 5 Oklahoma L. Rev. 83; Issue as to Negligence as a Proper Subject of Declaratory Judgment Action, 28 A.L.R.2d 957; Declaratory Judgments—Insurance Questions, 142 A.L.R. 8; Declaratory Judgment and Matured Causes of Action, 1953, 53 Columbia L.Rev. 1130; and see Tennessee Farmers Mutual Insurance Co. v. Hammond, 1956, 200 Tenn. 106, 290 S.W.2d 860; Aetna Casualty Co. v. Quarles, 4 Cir., 1937, 92 F.2d 321. See also, Cearfoss v. Wolfinger, 1950, 195 Md. 49, 72 A.2d 763 (alternative holding).

There is also the problem as to whether or not the second count of the amended complaint states the necessary jurisdictional amount. The court concludes that the allegations in this respect are insufficient. They are as follows:

"2. Plaintiff desires to satisfy the judgment against her and remove the cloud upon the good name of her deceased husband and family, but before plaintiff can undertake such payment it is necessary that she have an adjudication that in the event of such payment the defendant is liable to reimburse her for the amount thereof, up to the full amount of the judgment. Upon judgment of such liability of the defendant to the plaintiff, plaintiff alleges and represents to this Honorable Court that she will satisfy

9. Whether this gives rise to an escalator situation, in which plaintiff rises step by step, as and to the extent of payment, to the final goal of liquidation of the excess judgment, or a vacuum pump situation, by which each stroke reduces, but never finally wipes out, the amount of the excess judgment (since the judgment is not reduced by the same amounts because of attorney's fees and costs) is an additional reason for the refusal of the court to attempt to forecast the granary requirements of the farmer who proposes to plant and grow a single grain of wheat—if he *does* buy and plant and harvest it, and then replants the progeny, etc.

the said judgments of the Mabes against her."

The only assets of the estate of Lee, available to the satisfaction of the Mabes' judgments, were $1,441.48, which has been distributed. There is no allegation that even that amount will be paid to the Mabes out of the Lee estate; that the Lee estate could pay $10,000; or that the plaintiff, as administratrix, has been authorized, or is authorized, to pay or will pay anything on said judgments.

The amended complaint is therefore dismissed.