Lewis E. GASKILL, Jr.

v.

**PREFERRED RISK MUTUAL INSURANCE COMPANY, an Iowa corporation.**

Civ. No. 15170.

United States District Court
D. Maryland.

Feb. 4, 1966.

---

Melvin J. Sykes and Francis D. Murnaghan, Jr., Baltimore, Md., for plaintiff.

Samuel S. Smalkin, Baltimore, Md., for defendant.

THOMSEN, Chief Judge.

In this diversity action plaintiff (Gaskill), an additional insured under an automobile liability policy issued by defendant (Preferred), is suing Preferred for alleged bad faith and negligence in failing to settle a suit filed against Gaskill arising out of an injury to an infant struck by the insured automobile while driven by Gaskill, which resulted in a judgment against him for an amount far above the policy limit.

The questions presented are: (1) whether Preferred breached any duty it owed to Gaskill; and (2) if it did, whether Gaskill can recover herein, since he has not himself paid out any money.

In Sweeten, Adm'r v. National Mutual Insurance Co., 233 Md. 52, 194 A.2d 817 (1963), the Court of Appeals of Maryland held that a demurrer to a declaration in an action generally similar to the instant case should have been overruled. The Court said:

> "The appellee appears to concede that the declaration sufficiently alleges a duty to settle on the part of the insurer, and a breach of that duty, both on the theory of negligence and on the theory of bad faith. We are referred to no Maryland case on the subject nor have we found one. The prevailing view appears to be that recovery should be rested on the theory of bad faith, because the insurer has the exclusive control, under the standard policy, of investigation, settlement and defense of any claim or suit against the insured, and there is a potential, if not actual, conflict of interest giving rise to a fiduciary duty. (Citations omitted) All authorities seem to agree that the liability is in tort, not in contract, although arising out of a contractual undertaking. But many courts hold that the obligation is not merely to exercise good faith but to use due care. Professor Keeton seems to think that there is no practical difference in the results, since on either theory the question is one for the jury. Many courts allow recovery on both theories, and some courts that restrict recovery to bad faith permit evidence of negligence in the proof. In view of the appellee's concession, we see no reason to choose between the two theories in the case at bar." 194 A.2d at 818.

In Lee v. Nationwide Mutual Insurance Co., D.Md., 184 F.Supp. 634, 638 (1960),

reversed on other grounds, 4 Cir., 286 F.2d 295 (1961), Judge Watkins said:

"An insurer is not obligated to accept an offer merely because it is within the policy limits. As our Fourth Circuit Court of Appeals said in American Casualty Company of Reading, Pa. v. Howard, 4 Cir., 1951, 187 F.2d 322, 329:

" 'Accordingly, when the insurer fully lives up to its duty, there is no right in the insured to compel the insurer to offer the amount of its maximum limit in order to effect the amicable settlement of a claim against the insured and to protect the insured against a possible judgment in excess of the policy limit. Insured can readily secure all needed protection by purchasing, and paying for, a policy with a high limit of liability on the insurer.'

"However an insurer is obligated to exercise a reserved power to negotiate and settle with proper regard for the interests of the insured, and is liable for damage resulting from wrongful failure to settle within policy limits. * * *"

Neither Judge Watkins nor the Fourth Circuit found it necessary to decide whether the duty should be phrased in terms of reasonable care or of good faith.

Since the instant case has been tried on the merits, the Court must consider the nature of the duty in order to decide whether it has been breached. The Court has been aided by the opinion in American Casualty Co. v. Howard, quoted by Judge Watkins, supra, which involved South Carolina law, and by the careful analysis of the problem in Radio Taxi Service, Inc. v. Lincoln Mutual Ins. Co., 31 N.J. 299, 157 A.2d 319 (1960). That case was followed by the Supreme Court of Appeals of Virginia in the recent case of Aetna Casualty & Surety Co. v. Price, Va., 146 S.E.2d 220 (1966), which quoted with approval the following language of the New Jersey Court:

" * * * [T]he obligation assumed by the insurer with respect to settlement is to exercise good faith in dealing with offers of compromise, having both its own and the insured's interests in mind. And it may be said also that a reasonably diligent effort must be made to ascertain the facts upon which a good faith judgment as to settlement can be formulated. * * *

" * * * A decision not to settle must be an honest one. It must result from a weighing of probabilities in a fair manner. To be a good faith decision, it must be an honest and intelligent one in the light of the company's expertise in the field. Where reasonable and probable cause appears for rejecting a settlement offer and for defending the damage action, the good faith of the insurer will be vindicated. * * *"

■ It seems clear that the duty includes elements both of good faith and of reasonable care. This Court concludes that the proper test of liability in such a case as this (and the test which this Court believes the Maryland Court will probably apply when required to decide the question) is the good faith test, with the amplifications and limitations suggested by the quotations from the New Jersey Court, the Fourth Circuit and Judge Watkins, set out above.

■■ On the second point raised by Preferred herein, the Maryland Court said in Sweeten v. National Mutual Insurance Company, supra:

"The appellee also relies upon a statement by Chief Judge Parker in State Automobile Ins. Co. v. York, 104 F.2d 730, 734 (C.A.4th), cert. den. 308 U.S. 591, 60 S.Ct. 120, 84 L.Ed. 495, that the insured was not damaged by the company's refusal to settle 'as he had not paid the judgment against him and testified that he never expected to pay it.' The appellee says that this was an alternate ground of decision, but even if it were, it was in effect disapproved and overruled by the later decision in Lee v. Nationwide Mutual Insurance

Company, 286 F.2d 295 (C.A.4th). Certainly the trend of all the recent decisions is towards the view that payment is not a prerequisite to recovery in this type of situation.

\* \* \* \* \* \*

"The appellee also relies upon the case of Dumas v. Hartford Accident & Indemnity Co., 92 N.H. 140, 26 A.2d 361, holding that the essence of the legal injury is pecuniary loss to the plaintiff. We do not agree. Before payment the mere existence of an unsatisfied judgment may cause legal injury by loss or impairment of credit, and inability to obtain or retain an automobile operator's license, except under certain statutory penalties or conditions. We are constrained to follow what we think is the great weight of authority at this time, in a question not previously decided in this State. We think the demurrer should have been overruled." 233 Md. 52, at 56, 57, 194 A.2d 817, at 819.

That decision is binding on this Court.

There is little dispute about the historical facts in the instant case. They are set out in proposed findings submitted by the respective parties, each marked by opposing counsel, to show which facts are admitted, which disputed and which considered immaterial. Most of the disputes were resolved at a hearing, as noted on the original proposed findings. In this opinion the historical facts will be summarized, the ultimate facts found, and the conclusions of law stated.

In August 1959, Gregory Morris, four years of age, was struck on a road in Harford County, Maryland, by an automobile driven by Gaskill with the permission of the owner, Jeannine Williams, who later married Gaskill. Preferred had issued Miss Williams an automobile liability policy with a $10,000 limit for injuries to one person. Under the omnibus clause in the policy, Preferred owed Gaskill the same duties it owed the named insured.

In December 1961 suit was filed against Gaskill and Miss Williams in the Circuit Court for Harford County by Gregory's parents as his next friends and by the parents in their own right for their loss resulting from his injuries. Damages of $300,000 were claimed. A. Freeborn Brown, Esq., of Harford County, and Paul Berman, Esq., of Baltimore City, both experienced trial lawyers, represented Gregory and his parents.

Under the terms of its policy, Preferred was obliged to defend the suit and was vested with absolute control of that defense. In addition, it had the exclusive right to negotiate with respect to possible settlement, and to make, accept or reject any settlement offers.

Preferred engaged as attorneys to represent Gaskill and Miss Williams a law firm in Baltimore City, not the firm and attorney representing Preferred in this case. Samuel D. Hill, Esq., a partner in the firm, handled the case. Preferred wrote to Gaskill and Miss Williams, advising them that the amount claimed was in excess of the policy limit and that they had a right to obtain other counsel to defend them "on the excess of the policy limits". The letter continued: "If you do not desire to obtain additional counsel on your own behalf, you need not, and you may use the services of the counsel which we have selected at no additional expense to you." Gaskill and Miss Williams elected not to obtain additional counsel.

There was some dispute about both the existence of liability and the extent of the injuries to Gregory. Gaskill has consistently maintained that he was not at fault, but Preferred was required to and did evaluate the issue of liability on all the facts. Counsel retained by Preferred to represent Gaskill (hereinafter referred to as "counsel") believed and advised Preferred at an early date that the case was one in which the jury would probably find liability, and the area supervisor of Preferred's claim department, who was in charge of the case, expressed himself on February 22, 1963, as expecting a verdict for the plaintiff in the personal injury case. Counsel never seriously contested liability in settlement

negotiations, but indicated in his letters and personal contacts with Gregory's attorneys that the essential questions affecting the evaluation of the case were (1) the extent of Gregory's injury, and (2) whether Gregory's condition was caused by the accident or by a sledding episode which occurred approximately a year and a half later. These issues were characterized by counsel in his correspondence with Preferred as the real questions in the case.

By April 1963 counsel knew that Dr. John O. Sharrett, a neurological specialist who had seen Gregory in consultation, had testified on deposition that Gregory had suffered permanent brain damage which was objectively manifested in electro-encephalographic tracings, that this damage involved personality and behavior changes, and that the damage was caused by the automobile accident in this case and not by the subsequent sledding episode. This testimony was supported by other medical evidence. Neither Preferred nor counsel obtained a physical examination of Gregory by a physician of their choice or had any medical testimony to present at the trial, because they believed that Dr. Sharrett was as conservative a neurologist as could be obtained.

On February 21, 1963, Gregory's attorneys, knowing the policy limits, had offered to settle the case for $9,500 "in order to save the expenses of trial". Preferred did not accept the offer and made no counter-offer, not being in a position to evaluate the case for settlement purposes until it had completed its file on the medical aspects of the case, particularly the issue of causation, by taking the deposition of Dr. Sharrett and obtaining the hospital record.

The personal injury case had been scheduled for trial in the Circuit Court for Harford County on February 26, 1963, but counsel removed the case to another county, in part for the reason that a senior partner of the firm "did not feel kindly disposed * * * at this point" toward one of Gregory's attorneys, and said: "So remove it and let him wait". The case was removed to the Circuit Court for Cecil County and set for trial June 13.

On May 31, Berman, Gregory's Baltimore attorney, wrote to counsel:

"Quite some time ago I told you I would settle this case for the policy limits but have not had any response from you. I am sure you know I will have to spend a great deal of time and effort in preparing this case for trial, and if I do have to prepare for trial, the offer to settle within the policy limits will be withdrawn.

"Unless you advise me you will settle for the policy limits on or before Wednesday, June 5th, 1963, please consider my offer to settle the case for the policy limits withdrawn."

On June 4 counsel wrote to the area claims supervisor:

"I received your letter of May 6, 1963 regarding the opinion of your medical consultant. This does not help particularly with the trial of this case. This case is coming up for trial on June 13, 1963 in Cecil County. I think it is about time that we made a settlement offer and would appreciate your authority. The Plaintiff's attorney has demanded the policy limit. This does not make it much of a gamble for you.

"However, I feel that we should make a substantial offer since we seem to have the harder side on all of the issues involved. I suggest that you give me authority up to $7500 to try to settle this case. Please let me hear from you right away."

He had previously advised Preferred that "apparently this boy was seriously injured" and that "this case could be one which brings a high price because of the head injury to the little boy".

On or about June 7 the area claims supervisor authorized a top limit of $2,500 in settlement of the case. Counsel regarded this as an unreasonable figure. He knew at that time that there was

at least an even chance that the verdict would exceed the policy limits in light of the information then known to Preferred as well as to counsel.

On June 12, the eve of trial, the $2,500 offer was communicated for the first time to Berman, who immediately delivered by hand to counsel a letter which read:

"After talking with you on the telephone today about the captioned case, I thought I had better write you a letter advising that my clients will still take $10,000 in settlement of the case, even though I heretofore told you that if your client did not accept the offer by Wednesday, June 5, 1963, it would be withdrawn. I am hereby renewing the offer of my clients to settle this case for $10,-000.

"I understood you to tell me today that your client authorized you to offer $2,500 in settlement. That was the first time I had heard of any offer of settlement. However, my clients will not accept $2,500 but will accept $10,000, as hereinabove set out."

The case in Cecil County commenced as scheduled on June 13. Counsel's trial plan was to attempt on technical grounds to exclude damaging medical evidence. In this he was unsuccessful. At the end of the first day's trial, counsel concluded that the plaintiffs had presented a very strong case, even stronger than he had anticipated, and that the "breaks" were all going against him. In view of these considerations and of information which he had had for some time as to the previous liberality of the jury panel from which the jury had been chosen, he felt certain that the verdict would be for the plaintiffs in an amount substantially in excess of the policy limits. Counsel therefore telephoned the area claims supervisor and reported to him that "it looked like this was going to be a big verdict both from the testimony that had then been adduced and from the fact that the particular jury involved had been giving some large verdicts". In

that conversation, counsel recommended that Preferred offer the full policy limits. Counsel was aware at that time and made the area supervisor aware of the dangers of offering anything less than the full policy limits.

The claims supervisor authorized counsel to settle the case for the full policy limits if necessary, but instructed counsel to "try to save something".

On the evening of June 13 Berman's written offer of June 13 to settle the case for $10,000 had not been withdrawn and was still open, and was known to Preferred and counsel to be still open. Counsel did not accept the offer, but instead, complying with the instruction to "try to save something", offered to pay $9,000 in settlement of the case. Brown told counsel (Hill) that it would be necessary for him (Brown) to submit the offer to the client and also to discuss it with Berman, and Hill asked Brown to call him at his home that night after 9:00 o'clock. Hill said that Preferred might be willing to go a few hundred dollars more than $9,000 but they would not pay $10,000 as they wanted to save something on their policy. Brown called Hill at his home at approximately 10:30 that night, and told Hill that in view of the fact that Preferred had made plaintiffs go on with the trial of the case, and that Preferred wasn't *then* willing to pay the limit of its policy, which was $10,-000, and in view of the fact that plaintiffs had incurred tremendous expenses in having witnesses there and getting ready for trial and then going to the first day's trial, that it would be necessary to go on with the trial in the morning. Hill still refrained from offering $10,000.

On the morning of June 14 prior to the resumption of the trial, Brown handed Hill a letter which had been dictated by Berman the night before and signed by Brown, which withdrew the offer to settle for $10,000, referred to the additional expense of preparing for the second day of the trial, and charged Preferred with bad faith and negligence in refusing the offer to settle within the policy limits. Hill thereupon

asked for a conference in the chambers of the judge presiding at the trial. During that conference Gregory's attorneys offered to settle for the policy limits of $10,000 plus certain additional expenses for expert witnesses, namely, Dr. Phillips and Dr. Merlis, the University Hospital electro-encephalographer, in the range of $300 to $500. Counsel for the insurer expressly refused to pay such expenses.

At no time until after the conclusion of the conference in the judge's chambers did counsel ever inform Gaskill of any amounts offered or demanded in settlement or attempt to ascertain his wishes or provide him with any opportunities to take any action in regard to settlement. At the morning recess of the second day of trial, counsel obtained a court reporter to take down a conference between himself and Gaskill, in which counsel told Gaskill a part only of what had happened. Gaskill admits that if he had been asked to contribute toward any settlement that was being discussed on the second morning of trial he would not have contributed anything.

The trial continued, and the jury returned a verdict in the total amount of $50,000 against Gaskill. Counsel made no motion for a new trial and took no appeal, but reported to Preferred that he knew of "no particular points at the trial of the case on which the judge made an erroneous decision".

On June 20, 1963, the counsel retained by the insurer wrote Mr. and Mrs. Gaskill a letter, in which he said, inter alia:

"If anyone contacts you on behalf of the Plaintiffs as far as collection of the amount over the $10,000 please refer them immediately to us and do not talk to them about this. If you have any questions about this, we will be glad to try to answer them. Again our thanks for your kind cooperation."

In fact, Gregory's attorneys had already spoken to Gaskill. While the jury was still out Berman had told Gaskill that they would like to see him after the trial was over. Immediately after the trial they had another conversation, and ten days later Brown asked Gaskill to come to his office. There Brown suggested that Gaskill sue Preferred on grounds of negligence and bad faith, and later arranged for Gaskill to consult the attorneys who are appearing for him in this proceeding, the same men who had cooperated with Berman in the case of Lee v. Nationwide Mutual Ins. Co.

Gaskill, except for the judgment in the personal injury case, is not insolvent. He has stated in open court that he will retain none of the proceeds of any recovery herein and that he is agreeable to any provision in the judgment which may be necessary to insure that Gregory and his parents will receive any recovery, other than the court costs incurred by him in this proceeding.

 In view of the facts set out above, the Court finds that Preferred and its counsel failed to exercise good faith in the conduct of the settlement negotiations, particularly on the afternoon and evening following the first day of the trial, when it was apparent both to counsel and to the area supervisor that there would probably be a verdict substantially in excess of the policy limits. Whatever may be thought of the failure to offer more than $2,500 before the trial began, it is clear that under the circumstances existing on the afternoon and evening following the first day of the trial, good faith required Preferred to accept the offer to settle for $10,000, which was still open. The instructions of Preferred's area supervisor to counsel to try to save something and the manner in which counsel carried out those instructions amounted to a breach of the duty owed by Preferred to Gaskill.

The damages recoverable herein amount to $40,000, plus interest thereon from June 17, 1963, and the costs of this proceeding.

Counsel should agree upon a proper judgment order.